Paul R. TIBBS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 88–CF–993 and 92–CO–1238.

District of Columbia Court of Appeals.

Submitted June 3, 1993.

Decided July 19, 1993.

Andrew J.J. Delehanty, Washington, DC, appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, Elizabeth Trosman, David Schertler, and Anthony Asuncion, Asst. U.S. Attys., Washington, DC, were on the brief for appellee.

Before ROGERS, Chief Judge, and TERRY and SULLIVAN, Associate Judges.

TERRY, Associate Judge:

Appellant was charged by indictment with one count of armed robbery.[1] His first trial ended in a mistrial when the jury was unable to reach a unanimous verdict, but after a second trial he was found guilty as charged. From the judgment of conviction he noted an appeal (No. 88–CF–993). While that appeal was pending, he filed a motion in the trial court to vacate his sentence under D.C.Code § 23–110 (1989), claiming that he had not received the effective assistance of counsel at his trial. The court denied the motion without a hearing, and appellant noted a second appeal (No. 92–CO–1238), which we have consolidated with the first. Appellant makes no claim of error in the direct appeal. His only contention here is that the trial court erred

---

1. D.C.Code §§ 22–2901 and 22–3202 (1989).

in denying his § 23–110 motion without a hearing. We hold that appellant's claim of ineffective assistance of counsel, when judged under "the now familiar test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),"[2] is without merit. Accordingly, we affirm both the judgment of conviction and the denial of the motion to vacate.

## I

On December 31, 1986, Stephanie Hilton, an off-duty police officer, was robbed at gunpoint in the parking lot of her apartment building as she was returning home from work at approximately 2:45 a.m. When the robber was only three or four feet away from Officer Hilton, he pointed a gun at her face, told her to "freeze," and ordered her to place her belongings on the ground. He then picked up her purse and ran off. Officer Hilton testified[3] that she had a clear view of the robber's face because the parking lot was very well lighted. She had noticed him, in fact, sitting in a green Plymouth in the parking lot with another man just moments before the robbery.

After the robber fled, Officer Hilton called the police and described to them the robber's appearance and that of the car in which he had been sitting. Hilton later was shown a group of photographs and positively identified appellant from one of them as the robber. She also identified him in a subsequent lineup, and again in the courtroom at trial, saying:

[W]hen something like that happens to you, you don't forget. He was right there in my face, and I'll never forget that. I'm positive.

A few weeks after the robbery, the police also asked Officer Hilton to view a row of cars parked near her apartment. She identified one of them, a green Plymouth, as the car in which she had seen the robber sitting just before the robbery. The owner of that car was Henrietta Richardson. She testified that her son, who was friendly with appellant, had driven the car in the past.

Appellant presented a defense of mistaken identity. Officer Hilton had testified that the robber, whom she identified as appellant, was clean-shaven. Defense counsel, however, called two witnesses who said that they had known appellant for several years and that he typically was not clean-shaven. The defense also produced several photographs depicting appellant with facial hair.

## II

Appellant asserts that his counsel's decision not to call his wife, Terry Tibbs, as a witness at the second trial amounted to ineffective assistance of counsel. At the first trial (which ended with a hung jury) counsel had called Mrs. Tibbs, who provided him with an alibi. Mrs. Tibbs was scheduled to testify at the second trial, but when she did not appear, the court on the second day of trial issued a subpoena for her appearance. On the third day, after two other defense witnesses testified, defense counsel informed the trial court that he and appellant had decided not to call Mrs. Tibbs. Counsel told the court:

Your Honor, that would conclude the Defense's evidence. I did want to put on the record the fact that we discussed Terry Tibbs' absence.... I want the Court to be aware of the fact that he is— it is our decision that she will not be presented. She's not available, and we prefer to go forward.

In the motion to vacate his sentence under D.C.Code § 23–110, filed on his behalf by newly appointed counsel, appellant asserted that his trial counsel had been ineffective for failing to call Mrs. Tibbs to testify at the second trial. The government, in response, submitted an affidavit from trial counsel disclosing in detail the reason why Mrs. Tibbs had not been called. In the affidavit counsel stated that on the

---

**2.** *Webster v. United States,* 623 A.2d 1198, 1199 (D.C.1993).

**3.** The testimony we summarize here is that which the parties presented at the second trial, which resulted in appellant's conviction.

evening of the second day of the retrial, he spoke by telephone with Mrs. Tibbs about her obligation to appear in court in response to the subpoena. She replied that "she could not and would not testify as she had at the first trial because her testimony was not true and Paul Tibbs knew this." When counsel later discussed this conversation with appellant, the two of them decided not to call Mrs. Tibbs.[4] Counsel also stated in the affidavit that he did not seek to admit the testimony from the first trial into evidence "because I could not sponsor perjured information, and I knew from my discussion with Mrs. Tibbs that her testimony at the first trial was not true."

■ Although appellant claims that a hearing on his ineffectiveness claim is required, he offers no specific reason but merely asserts that "[i]f the hearing court found that there was not a good reason to omit Terry Tibbs' testimony at trial, relief in the form of a new trial would be in order." We disagree. There is, to be sure, "a presumption that a trial court presented with a § 23–110 motion alleging ineffectiveness of defense counsel should conduct a hearing." *Sykes v. United States*, 585 A.2d 1335, 1339 (D.C.1991) (citation omitted); *see Gray v. United States*, 617 A.2d 521, 523 (D.C.1992). But there are three types of claims which this court has held do not require a hearing: "(1) vague and conclusory allegations, (2) palpably incredible claims, and (3) assertions that would not merit relief even if true." *Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990) (citations omitted). In addition, there are some § 23–110 motions "which can be resolved on the basis of the available record," so that a hearing is not required. *Alpizar v. United States*, 595 A.2d 991, 993 n. 4 (D.C.1991). This is such a case.

Both the trial transcript and defense counsel's affidavit show that defense counsel and appellant together determined that it would be unnecessary—indeed, impru-

dent—to call Terry Tibbs as a witness. Counsel told the court on the third day of trial, after the subpoena for Mrs. Tibbs had been issued, that she was "not available and *we prefer* to move forward." The fact that this "we" refers to both appellant and his counsel is made clear by counsel's affidavit, which states explicitly that the two of them decided together, after discussing the matter, that Mrs. Tibbs would not be called "even if the marshals brought her to court."[5] Thus it is plain that appellant himself was involved in the decision not to call Mrs. Tibbs, and that he cannot now try to shift the blame for her absence onto his attorney.

■ But there is a more fundamental reason why we must reject appellant's argument. Under *Strickland v. Washington, supra,* a defendant claiming ineffective assistance of counsel has a twofold burden:

> First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.

466 U.S. at 687, 104 S.Ct. at 2064. We see nothing in the record to suggest that counsel's performance was deficient. But even if we assume for the sake of argument that it was, we conclude, for the reasons which follow, that the defense was not prejudiced.

■ In the District of Columbia, as in every other jurisdiction of which we are aware, an attorney has a duty not to present false testimony to a court. Under Rule 3.3(a)(4) of this court's Rules of Professional Conduct, which apply to all members of the District of Columbia Bar, "[a] lawyer shall not knowingly ... [o]ffer evidence that the lawyer knows to be false...."[6] As we said long ago in rejecting a similar claim of ineffective assistance:

> Counsel does have an obligation to defend with all his skill and energy, but he

---

4. Counsel said in his affidavit, "We agreed we would not present her."

5. Appellant does not contest the veracity of counsel's affidavit.

6. There is one narrow exception to this rule, but it applies only when a defendant in a criminal case, against the advice of counsel, wishes to testify falsely in his own defense. *See* Rule 3.3(b). That exception has no bearing on this case.

also has moral and ethical obligations to the court, embodied in the canons of ethics of the profession.... The ethical strictures under which an attorney acts forbid him to tender evidence or make statements which he knows to be false as a matter of fact.... His activities on behalf of his client are circumscribed by the principles and traditions of the profession and may not include advancing known false testimony in an effort to win his client's cause.

*Thornton v. United States,* 357 A.2d 429, 437–438 (D.C.) (citations and internal quotation marks omitted), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976); *see State v. Lloyd,* 48 Md.App. 535, 545–47, 429 A.2d 244, 250 (1981) ("when a defendant tells his attorney before trial that he committed the crime charged and the attorney is convinced that his client is telling the truth, the attorney is precluded under [an ethical rule] from calling or presenting alibi witnesses who would offer perjured testimony"). Moreover, the Supreme Court has held that "as a matter of law, counsel's conduct [in refusing to cooperate in presenting perjured testimony] cannot establish the prejudice required for relief under the second strand of the *Strickland* inquiry." *Nix v. Whiteside,* 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986); *see also Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993) (discussing *Nix v. Whiteside*). The Supreme Court in *Nix* concluded that because defense counsel treated the defendant's "proposed perjury in accord with professional standards, and since [the defendant's] truthful testimony could not have prejudiced the result of his trial," counsel was not ineffective. 475 U.S. at 176, 106 S.Ct. at 999. We hold, following *Nix,* that as a matter of law an attorney is not ineffective for refusing to present testimony which the attorney knows to be false.

█ Because appellant has offered no other basis for his claim of ineffective assistance, we conclude that a hearing on that claim was unnecessary. Accordingly, appellant's conviction and the denial of his § 23–110 motion without a hearing are both

*Affirmed.*