David Q. BLACK, Appellant,

v.

UNITED STATES, Appellee.

No. 98–CF–321.

District of Columbia Court of Appeals.

Argued May 3, 2000

Decided July 20, 2000

Douglas Wham, for appellant.

Valinda Jones, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, GLICKMAN, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

David Q. Black was found guilty by a jury of assault with intent to kill while armed,[1] first degree murder while armed (premeditated),[2] two counts of possession of a firearm during a crime of violence or dangerous offense,[3] carrying a pistol without a license,[4] and threatening to injure a person.[5] Black raises several issues on appeal: 1) that the trial court erred in denying his motion for judgment of acquittal on the charge of first degree murder; 2) that the trial court erred in denying his motion to suppress in-court and out-of-court identifications by an eyewitness, 3) that the Double Jeopardy clause bars his conviction for assault with intent to kill, and 4) that the government violated its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We remand this case for further proceedings on the *Brady* issue.

## I.

The government's evidence at trial showed that on February 2, 1997, at approximately 1:30 p.m., Black was arguing with a man named James Smith (Junebug) in the 400 block of K Street, N.W. Black grabbed a gun from his car nearby and fired twice across a busy street at Smith, instead striking and killing an innocent bystander, Alice Chow. Two eyewitnesses, Larry Johnson and Barbara Marshall, testified that they knew Black and Smith and that they both saw Black and Smith arguing in a parking lot on K Street. Johnson and Marshall testified that they saw Smith run from the parking lot and that they saw Black retrieve a gun from a car and shoot twice at Smith, who was running away towards a church. Mrs. Chow, who was walking home from the church service, was struck by one of the two bullets fired by Black.

## II.

Black argues that the trial court erred in denying his motion for judgment of acquittal on the charge of first degree premeditated murder. Black specifically contends that the evidence was insufficient to support his conviction because the government failed to prove that he had acted with the intent to kill.[6] In reviewing a denial of a motion for judgment of acquittal, this court must "view the evidence in the light most favorable to the government, giving deference to the fact finder's right to weigh the evidence, determine the credibility of the witnesses, and draw inferences from the evidence presented. We can only reverse a conviction on this ground if there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." *Patton v. United States,* 633 A.2d 800, 820 (D.C.1993).

D.C.Code § 22–2401 states in pertinent part: "Whoever ... kills another purposely ... of deliberate and premeditated malice ... is guilty of murder in the first degree." Therefore, to prove first degree premeditated murder, the government must show that before acting the accused "gave thought to the idea of taking a human life and reached a definite decision to kill." *Ruffin v. United States,* 642 A.2d 1288, 1291 (D.C.1994) (quoting *Mills v. United States,* 599 A.2d 775, 781 (D.C.1991)) (internal citation omitted).

1. D.C.Code §§ 22–501, –3202 (1996 Repl).

2. D.C.Code §§ 22–2401, –3202.

3. D.C.Code § 22–3204(b).

4. D.C.Code § 22–3204(a).

5. D.C.Code § 22–2307.

6. Black does not challenge the application of the common law doctrine of transferred intent. Black also does not challenge the sufficiency of the evidence that he caused the death of Chow or that he intended to kill Smith. Black instead argues that he lacked the necessary premeditation and deliberation for first degree murder.

Deliberation requires a showing that "the accused acted with consideration and reflection upon the preconceived design to kill." *Id.* Both premeditation and deliberation may be inferred from the surrounding facts and circumstances, and may occur in a period "as brief as a few seconds." *Harris v. United States*, 668 A.2d 839, 842 (D.C.1995) (quoting *Ruffin*, 642 A.2d at 1291).

 Black's claim that the trial court erred in denying his motion for judgment of acquittal has no merit. The government established at trial that Black and his intended target, Smith, were engaged in a heated argument immediately prior to the shooting. As Black walked to a nearby car, Smith started to run. Black retrieved a gun from the car, pointed his arms while reaching over the car, and fired the gun twice at Smith at relatively close range. Black subsequently fled the scene. Based on this evidence, the jury could reasonably infer premeditation and deliberation. Therefore, viewing the evidence in the light most favorable to the government, the trial court did not err in denying Black's motion for judgment of acquittal.[7]

 Black also argues that the trial court's denial of his motion to suppress his identification by Barbara Marshall was error. He contends that the circumstances under which Marshall made her identification were coercive, and therefore, the functional equivalent of undue suggestivity. In addition, Black posits that Marshall's identification of him was not sufficiently reliable to overcome the alleged coercion.

The trial court found that Marshall's identification of Black was not subject to undue suggestivity or coercion, and that her identification of Black was, in any case, reliable. We need not determine whether the identification was unduly suggestive in this case, as the trial court made a finding that it was reliable. *See Fields v. United States*, 698 A.2d 485, 490 (D.C.1997) (citing *Greenwood v. United States*, 659 A.2d 825, 828 (D.C.1995) (expressing that "if an identification is reliable it is admissible even if suggestive")).

 "This court is bound by the trial court's findings on whether identification procedures were impermissibly suggestive and whether an identification was reliable if they are supported by the evidence and in accordance with the law." *Turner v. United States*, 622 A.2d 667, 672 n. 3 (D.C. 1993) (internal quotation marks and citation omitted). In determining whether an identification was sufficiently reliable, this court has articulated five factors to be considered: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witnesses' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation." *Long v. United States*, 687 A.2d 1331, 1337 (D.C.1996) (citation omitted). In this case, Marshall already knew Black, and she was certain that she observed him shoot at Smith.

 With respect to the first factor, Marshall observed Black for a significant

---

7. Black similarly contends that the trial court erred in denying his motion for judgment of acquittal on the charge of threatening to injure a person. Black argues that the evidence presented by the government was insufficient to prove that his subsequent statements to Mr. Johnson that he planned to "put a cap in [Mr. Smith's] hand" constituted a threat. D.C.Code § 22–2307 prohibits one from threatening "to injure the person of another." The evidence must show that the threatening message was conveyed to either the object of the threat or a third party. *Beard v. United States*, 535 A.2d 1373, 1378 (D.C.1988); *United States v. Baish*, 460 A.2d 38, 42 (D.C.1983). Mr. Johnson testified on direct examination that as Black was giving him a ride one or two weeks after the shooting, Black asked him to convey the threatening message to Smith. This statement provides sufficient evidence that Black threatened Smith and that Black's words were "of such a nature as to convey fear of serious bodily harm or injury to the ordinary hearer." *Id.* Therefore, viewing the evidence in the light most favorable to the government, the trial court did not err in denying Black's motion for judgment of acquittal.

amount of time. She was able to observe Black arguing with Smith.[8] She saw Smith run away from Black. She then saw Black reach in a car and pull out a gun. Marshall then observed Black lean over the car, point the gun in Smith's direction, and fire two to three shots at Smith. Finally, Marshall saw Black drive away from the scene five or six minutes later. Furthermore, Marshall's attention was so focused on the incident that she testified that she knew the men were fighting because she observed the anger expressed on both men's faces. Because Marshall actually knew Black, she did not give a physical description of him, but was able to positively identify him by name.[9] Moreover, after being shown the photographs of both men, Marshall admitted that she knew both men; thus, she was certain that Black was the shooter. Accordingly, the record supports the trial court's determination that Marshall's identification of Black was reliable.

 Black also asserts on appeal that the Double Jeopardy Clause bars his convictions for assault with the intent to kill James Smith, and the murder of Alice Chow. He argues that multiple convictions for different statutory offenses cannot arise out of one assaultive act unless both of the victims have been physically injured. Specifically, he contends that because he was convicted of the murder of Chow, and because his assault conviction with respect to Smith was based on an intent-to-frighten theory, the Double Jeopardy Clause precludes the assault conviction. We review claims of the violation of the Double Jeopardy Clause and the merger of convictions *de novo. Maddox v. United States,* 745 A.2d 284, 294 (D.C.2000). Under the Double Jeopardy Clause, a person cannot receive multiple punishments for the same offense. *See Williams v. United States,* 569 A.2d 97, 98 (D.C.1989). To determine whether "the same act or transaction constitutes a violation of two distinct statutory

provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a[n] [element] which the other does not." *Byrd v. United States,* 598 A.2d 386, 389 (D.C.1991) (citation omitted).

 There was evidence that Black shot at Smith, after threatening his life, supporting his conviction for assault with the attempt to kill. *See* D.C.Code §§ 22–501, –3202. The bullet Black intended for Smith, however, killed Chow. *See* D.C.Code §§ 22–2401, –3202. There is no doubt that the elements required to prove first degree murder were not required for Black's assault conviction. *See Byrd,* 598 A.2d at 389. In addition, this court has articulated that generally "convictions for crimes involving distinct, identifiable victims do not merge." *Hanna v. United States,* 666 A.2d 845, 853 (D.C.1995). We have also upheld multiple convictions for a single assaultive act against multiple victims. *See James v. United States,* 718 A.2d 1083, 1087 (D.C.1998); *Gray v. United States,* 585 A.2d 164, 165 (D.C.1991). Furthermore, we expressed that "*assaults* that threatened or harmed individual victims ... constitute separate offenses." *Williams,* 569 A.2d at 99 n. 4 (emphasis added). In this case, Black was convicted of committing two separate offenses against two different individuals. Therefore, his convictions for assault with the intent to kill Smith and the murder of Chow, from the firing of multiple bullets at Smith, do not violate the Double Jeopardy Clause.

Finally, Black contends that the government violated its obligations under *Brady,* by withholding from the defense statements of an eyewitness, made during a police-administered Computerized Voice Stress Analyzer ("CVSA") test, that were inconsistent with the witness' inculpatory testimony and would have significantly im-

---

8. Marshall also recognized and identified Smith.

9. Marshall identified Smith by his nickname, Junebug.

peached her credibility. Black further argues that because there was no record developed before the trial court on this issue, we must remand the issue so that the trial court can hold an evidentiary hearing and make a materiality finding.

 *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. 1194. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Therefore, "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).

 In this case, the government was aware that Marshall had given possibly deceptive answers on a CVSA lie detector test that may have been inconsistent with her later statement to Detective Young. At the December 2, 1997 hearing on Black's motion to suppress, Detective Fox generally testified that Marshall gave possibly deceptive answers on a CVSA test about the offense. Black's attorney attempted to inquire from Detective Fox the actual contents of Marshall's interview, and "what [Marshall] was lying about," but the trial court sustained the government's objection and the substance of the interview was not disclosed to Black. The trial court also denied Black's request to call Detective Young and Marshall as witnesses at the suppression hearing to find out what statements Marshall made during the CVSA test that were inconsistent with her later statements to the police. Because we do not know the deceptive statements made by Marshall to Detective Young during the interview, we cannot make an informed determination of whether the information was material under *Brady.* It may be that Marshall's statements to Detective Young contradicted her inculpatory trial court testimony that identified Black as the shooter. Thus, the information could have served to impeach Marshall's testimony, and if timely disclosed by the government, may have produced a different result in this case. The trial court should have conducted an inquiry, either by requiring Detective Young to testify at the suppression hearing about the content of Marshall's statements during the CVSA test, or otherwise by requiring the government to produce more information about the substance of Marshall's interview.

In light of the foregoing discussion, the trial court is instructed to hold a further hearing in order to make a determination as to whether any inconsistent statements made by Marshall were material under *Brady,* and whether the statements were, in fact, cumulative of other information presented at trial by Black, as the government contends. If the trial court determines that there is a reasonable probability that the government's non-disclosure of material statements by Marshall affected the outcome of the trial, then the court must order a new trial. *See Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. If however, the trial court concludes that Marshall's statements were not material under *Brady,* then Black's convictions shall stand affirmed. Accordingly, this case is remanded to the trial court for further proceedings on the *Brady* issue.

*So ordered.*