Wei Hua WU, Appellant,

v.

UNITED STATES, Appellee.

Hung Yui Yee, Appellant,

v.

United States, Appellee.

Nos. 94–CO–1681, 98–CO–1428,
97–CO–1346, 97–CO–1910.

District of Columbia Court of Appeals.

Argued May 23, 2000.
Decided May 23, 2002.

David Jonathan Sitomer, appointed by the court, for appellant Wu.

Lois R. Goodman, appointed by the court, for appellant Yee.

Kathleen W. Konopka, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney at the time the brief was filed, and John R. Fisher, Mary Patrice Brown and Carolyn Kolben, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

WAGNER, Chief Judge:

In these consolidated appeals, appellant, Wei Hua Wu, appeals from three orders of the trial court denying his motions to vacate sentence and judgment filed pursuant to D.C.Code § 23–110 (2001), including one motion filed jointly with appellant, Hung Yui Yee, who also appeals from the order denying their joint motion. Finding no error in the trial court's rulings, we affirm.

## I.

### Factual and Procedural Background

Both appellants were convicted in a joint trial of six counts of armed robbery of six different victims. Appellant Yee was also convicted of one count of possession of an unregistered firearm. Yee's convictions were affirmed on appeal in an unpublished Memorandum Opinion and Judgment on May 23, 1991. Wu's convictions were affirmed in an unpublished opinion on September 10, 1991. Their convictions arose out of a robbery at the Yenching Palace Restaurant on Connecticut Avenue in the District of Columbia. Several employees at the restaurant identified Wu and Yee as the robbers. Yee's contentions on direct appeal were that the trial court erred in:

(1) denying a motion for mistrial after a government witness referred to his police identification number during cross-examination; (2) refusing to allow defense evidence to establish his motive for possessing the robbery weapon at the time of his arrest; and (3) imposing a mandatory minimum sentence under D.C.Code § 22–3202 (1989) [1] because the evidence was insufficient to support a finding that the gun used in the robbery was operable. In his direct appeal, Wu contended that the trial court erred in: (1) allowing "other crimes" evidence; and (2) denying a mistrial when a witness made reference to a police identification number. Both appellants filed post-trial motions, which we recount separately, except for their joint motion.

### A. Yee's Separate Post–Trial Motions

After his convictions were affirmed, Yee filed, through counsel, a motion for re-sentencing under the Youth Rehabilitation Act (D.C.Code § 24–803 (1981)),[2] or alternatively for reduction of sentence with a recommendation that he serve his sentence in a federal facility. In a letter to the court seeking reduction of sentence, Yee admitted committing the crimes and attempted to explain that the reason was because he "got into trouble." He identified a third person, who was not caught, as the instigator and the driver of the car that night. He expressed his remorse for committing the crimes. The trial court denied the requests for reduction or modification of sentence.

In a letter to the court received on August 16, 1995, Yee requested a complete copy of the files and record in the case, without cost. He explained that now that he has learned some English, he is of the opinion that he was "denied effective assis-

---

1. This section has been recodified as D.C.Code § 22–4502 (2001).

2. This section has been recodified as D.C.Code § 24–903 (2001).

tance of counsel by virtue of the false and incorrect translation of my native language...." He explained further that although both he and his translator at trial are of Chinese origin, their dialects are different, which "created a flaw in the actual and correct translation of the trial proceedings and the related activities."[3] The trial court granted Yee's motion to proceed *in forma pauperis*, but denied without prejudice his request for transcripts because Yee had provided only speculative and conclusory statements concerning his need for the transcripts.

In response to the court's order, Yee filed a second motion for transcripts. In that motion, he explained that he is of Chinese origin and not knowledgeable in the laws and rules of the District of Columbia or the United States. He also contended that his attorney failed to explain adequately the laws and rules during his trial and that he needed the transcripts for any collateral attack. The court denied the motion because Yee failed to show a particularized need for the transcripts. Yee did not appeal from these orders.

### B. *Wu's Separate Post–Trial Motions*

Following conviction, Wu's counsel filed on his behalf a Motion to Reconsider Sentence under Super. Ct.Crim. R. 35(b). Wu requested a Youth Rehabilitation Act study and sentencing under that Act. He stated that he did not dispute the seriousness of the offense or that incarceration was warranted. The court denied the motion, explaining that Wu was 22 years of age at the time of conviction, and therefore, ineligible for treatment under the Youth Rehabilitation Act. Further, the court concluded that Wu's claims of rehabilitation and good prison behavior were

more appropriate for consideration by the Board of Parole and that reduction of sentence was not warranted otherwise.

In March 1993, Wu filed a Motion for New Trial, which was resubmitted with leave of the court on April 26, 1993 to allow for the filing of signed affidavits in support of the motion. Wu claimed in this motion, filed pursuant to D.C.Code § 23–110, that trial counsel was ineffective in failing: (1) to call alibi witnesses, Gee Lee, Mon Suey Lee and Lung Chi Kin, to testify; (2) to file a motion to suppress pre-trial identifications; and (3) to file a notice of alibi. Wu filed an affidavit stating that he did not understand English, that he told his trial counsel that he was innocent, and that he was with the alibi witnesses on the night of the robbery. Mark Kuang filed an affidavit stating that the proffered witnesses had so informed him and that he had informed Wu's trial counsel. Mon Suey Lee and Gee Lee filed affidavits stating that they had been with Wu all evening from 5:00 p.m. on February 7, 1989 at 611 H Street, N.W.[4] Wu's appellate counsel for his direct appeal also filed an affidavit stating that he had left messages for Wu's trial counsel, but he had not returned the calls. The government filed an opposition to the motion, contending that Wu's claims were procedurally barred for his failure to raise them on direct appeal and to show cause and prejudice for his failure to do so.

The trial court held an evidentiary hearing at which defendant, Mark Kuang, Mon Suey Lee and Gee Lee testified on Wu's behalf. Wu's trial counsel was called by the government and testified. At the hearing, on cross-examination, Kuang testified that he was not with Wu at 11:15 p.m., the approximate time of the robber-

---

**3.** Yee had written the court two similar letters on March 21, 1995 and May 16, 1995.

**4.** The offense occurred at a restaurant located at 3524 Connecticut Avenue, N.W. at about 11:15 p.m.

ies. Mon Suey Lee testified that he was with Wu at the H Street restaurant, but he goes home about 8:00 or 9:00 p.m., and Wu was there until he left. Gee Lee (Chi Li in Cantonese) testified that he was with Wu between 4:00 p.m. and midnight on February 7, 1989. However, he was impeached on cross-examination with grand jury testimony he gave on April 12, 1989 when he said that he did not recall whether he was with Wu at 11:15 p.m. There was testimony that Gee Lee was a friend of Wu's father and that he had later gone to the restaurant where the robberies occurred, along with Kuang, and that he was charged thereafter with trying to intimidate witnesses.

Wu's trial counsel testified at the hearing. He explained that he did not file a motion to suppress identifications because he learned during discovery that two witnesses could not identify Wu and that two others were uncertain. He stated that his client informed him that his weight and hair length had changed since the offense date. Thus, according to counsel, he thought that these factors would be beneficial to the defense and that the witnesses' identifications might be enhanced based on the testimony of the officers who might testify at a suppression hearing. Wu's trial counsel also testified that he had spoken to the witnesses named by his client in support of his alibi. He testified that Wu told him that he was in Chinatown between 4:00 p.m. and 8:00 p.m. on the night of the offense. He also testified that Gee Lee wanted to know the game plan when he spoke to him, and he told him to tell the truth, but Gee Lee could not provide helpful information for the date in question. He testified that he explained that he did not file a notice of alibi because of the inconsistencies in the witnesses' statements. He stated that he decided not to call the various witnesses because it was too risky based on what they had told him, and he thought that they would not tell the truth. Trial counsel also testified that when he asked Wu where he was on the date of the offense starting in the morning, Wu responded that he was "somewhere other than where the robbery/kidnapping took place." Counsel testified that he met with Wu at least four times prior to trial, visited the crime scene, and spoke with various witnesses, none of whom corroborated Wu's alibi defense.

The trial court denied Wu's motion. As to Wu's claim that trial counsel failed to meet personally with the prosecutor or interview most of the government witnesses, the trial court found that Wu failed to demonstrate prejudice under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (the showing of prejudice requires that "a reasonable probability existed that, but for counsel's unprofessional errors, the result of the trial would have been different"). As to counsel's failure to file a motion to suppress identification, the trial court credited trial counsel's testimony that he had discussed the matter with Wu and the adverse impact that it might have on the case; therefore, the court concluded that Wu had waived this claim. In any event, the trial court concluded that Wu could show no prejudice as there was nothing in the photo array which was suggestive or otherwise subject to challenge.[5] Having credited trial counsel's testimony about his investigation of the alibi defense, the court concluded that counsel's performance in this regard was not deficient and that Wu was

---

**5.** While the trial court found deficient counsel's failure to view the photographs before trial, the court concluded that there was no prejudice as a result of this failure.

not prejudiced by it.[6] The court found neither deficiency nor prejudice in trial counsel's failure to file notice of an alibi defense. Finally, the trial court found that trial counsel's failure to call certain defense witnesses was a reasonable tactical decision under the circumstances. Wu noted a timely appeal from the court's ruling.

Wu filed another motion to vacate sentence, contending that the imposition of consecutive sentences on two of the robbery charges violated the Double Jeopardy Clause. The trial court denied this motion on the ground that the claim was barred procedurally for failure to raise it during the direct appeal. Wu appealed this ruling.

### C. Joint Post–Trial Motion of Yee and Wu

Yee and Wu filed, through counsel, a joint "Motion for Appointment of Counsel for Additional/New Trial Motions, Motion to Join Causes for Motions and Motion for Leave to Take Depositions." Wu and Yee requested that David Sitomer, who filed the motion on their behalf, be appointed to represent both of them.[7] In their joint motion, they contended that the trial court failed to inquire adequately into the qualifications and certifications of the interpreters who provided services to them at trial which impaired the presentation of a de-

fense. They also claimed that their trial attorneys were ineffective in: (1) explaining their rights, including the right to testify;[8] (2) assuring that they understood the proceedings; (3) interviewing witnesses and presenting an alibi defense; (4) challenging the admissibility of identification evidence and (5) challenging the accuracy of a translator's interpretation of the grand jury transcripts. They also claimed ineffective assistance of appellate counsel for: (1) not raising the issue of the attorneys' failure to file a motion to suppress identification and to interview and present alibi testimony; (2) not challenging as unreliable the translation of grand jury testimony; and (3) not raising the issue of their attorneys' failure to communicate with them about their respective cases.

The trial court denied the motion in separate orders for each appellant. In its opinion in Yee's case, citing Gonzalez v. United States, 697 A.2d 819 (D.C.1997), the trial court concluded that Yee's challenge related to the interpreters was procedurally barred. The trial court determined that Yee failed to show "cause" for failure to raise his remaining claims related to his trial during the direct appeal. The court held that it lacked jurisdiction to review the performance of his appellate attorney. Yee appealed only from this order.[9] Similarly, in denying Wu's motion,

---

**6.** The court specifically found from the evidence adduced at the hearing that Gee Lee could not remember if he had been with Wu on the day or at the time of the robbery; Kuang could say only that Wu told him that he was at the Ho Wah restaurant the night of the robbery; Mon Suey Lee testified that he left the restaurant between 8:00 and 9:00 p.m., before the critical hour.

**7.** Wu and Yee requested that David Sitomer be appointed *nunc pro tunc* to July 24, 1995, and they signed a waiver of any conflict of interest.

**8.** Neither appellant testified at trial.

**9.** The government points out that Yee's motion requested only the appointment of counsel and leave to take depositions, rather than post-conviction relief. In his Notice of Appeal, Yee described the order appealed from as one denying the appointment of counsel to pursue a § 23–110 motion. However, the government concedes that since the motion set forth the anticipated grounds for the § 23–110 motion, it can be construed as a denial of a request for relief under that statutory provision. *See Garmon v. United States*, 684 A.2d 327, 330 (D.C.1996).

the trial court concluded that Wu was procedurally barred from asserting, by way of collateral attack, claims which he could have raised on direct appeal or in earlier § 23–110 motions. The court determined that Wu failed to show cause for his failure to present these claims during his direct appeal. Finally, the court concluded that ineffective assistance of appellate counsel in a prior appeal cannot be raised in a § 23–110 motion.

## II.

We consider first the appeals from the denial of appellants' joint motion. Appellants argue that the trial court erred in denying their joint motion for the appointment of counsel, for new trial and other relief. Appellant Yee argues that the trial court abused its discretion in failing to appoint counsel to assist him in filing a § 23–110 motion. He contends that he was deprived of fundamental rights in "a manner that is plain error" in that he was not provided with an accurate translator. The government argues for affirmance because Yee failed to preserve the issue at trial and failed to show cause for not raising this issue on direct appeal or resulting prejudice. Appellant Wu argues that the trial court erred in denying his three motions to vacate sentence. The government responds that Wu's claims are procedurally barred either because he failed to raise them on direct appeal or in earlier motions under § 23–110.

### A. *Applicable Legal Principles*

Generally, there is no constitutional or statutory right to the appointment of counsel to pursue collateral relief after the direct appeal.[10] *Jenkins v. United States,* 548 A.2d 102, 104 (D.C.1988)

(citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), and *Johnson v. Avery,* 393 U.S. 483, 488, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). Therefore, the appointment of counsel provided for under D.C.Code § 11–2602 (D.C.2001) for the purpose of pursuing collateral relief is a matter within the sound discretion of the trial court. *Id.* at 105. A prisoner's request for the appointment of counsel is to be considered under an "interests of justice" standard. *Id.* In applying that standard, we start with the criteria for considering whether a hearing is necessary under § 23–110. *Id.* Where the prisoner's motion is "palpably incredible ... fails to state a claim, i.e., the assertions even if true, would not entitle the prisoner to relief under § 23–110, or ... is vague and conclusory," the appointment of counsel is not required. *Id.* (citations and internal quotation marks omitted). Thus, usually, "if the prisoner's § 23–110 claim is sufficient for a hearing, it presumably will be colorable enough to warrant appointment of counsel under § 11–2601(3)(A)." *Id.* We review denial of such requests for an abuse of discretion. *Matos v. United States,* 631 A.2d 28, 33 (D.C.1993).

Section 23–110 is not a substitute for a direct appeal. *Head v. United States,* 489 A.2d 450, 451 (D.C.1985) (citing *Fields v. United States,* 466 A.2d 822, 827 (D.C.1983)) (other citations omitted). Thus, "[w]here a defendant has failed to raise an available challenge to his conviction on direct appeal, he may not raise that issue on collateral attack unless he shows both cause for his failure to do so and prejudice as a result of his failure." *Id.* (citing *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816

---

**10.** *But see Williams v. United States,* 783 A.2d 598 (D.C.2001) (en banc) (holding that counsel appointed under the Criminal Justice Act for the direct appeal has a duty to note an appeal from the denial of an appellant's motion filed pursuant to D.C.Code § 23–110).

(1982)) (other citations omitted). The court is not required to consider successive collateral attack motions raising issues previously decided by the court. *Vaughn v. United States*, 600 A.2d 96, 97 (D.C. 1991).

### B. *Analysis*

 Applying these principles, we conclude that the trial court did not err in denying the joint motion of Yee and Wu for collateral relief. First, neither appellant raised in the trial court a claim that their translators were incompetent or that they were not qualified properly by the court during the proceedings. "The right to challenge the competence of a translator 'may be waived if it is not raised in a timely fashion.'" *Gonzalez, supra*, 697 A.2d at 822 (quoting *Redman v. United States*, 616 A.2d 336, 338 (D.C.1992)). If a defendant does not inform the court in a timely manner about difficulties, the court cannot address the situation by taking corrective measures. *Id.* at 823–24 (citing *Redman*, 616 A.2d at 338)). The written record shows no complaints about appellants' translators, and they concede as much. Appellants did not raise any question during trial about the quality of their translators.

At the commencement of trial, Yee's interpreter, Jong Tseng, informed the trial court that he had worked with the State Department for approximately fifteen years and that he was a certified interpreter in Chinese. Counsel for Wu explained that he had hired Edmond Yung as his interpreter, and that he had been with him from the beginning of the case. Wu's counsel also stated that he had no problem when using this interpreter for Wu in other proceedings. Thereafter, the trial court

swore the interpreters. During the course of trial, Wu's counsel informed the court that his translator challenged a brief portion of the translation of the court's translator who was translating for a witness, Cho Kwan Leung. Yee's counsel then checked with his interpreter who agreed with Wu's interpreter, and the trial court intervened to assure that the discrepancy was corrected. During the testimony of a witness who spoke Cantonese, Wu complained again about a portion of the translation by the court's translator, but not his own translator.

 Appellants could have challenged any alleged difficulties with the interpreters' Mandarin dialects during the trial proceedings. This does not appear to be a case in which the defendants would have only known of the difficulties with the interpreter after the trial ended, as appellant Yee contends. On direct appeal, appellants could have raised a claim under the Interpreters for Hearing–Impaired and Non–English Speaking Persons Act, D.C.Code § 31–2701, *et seq.* (1981).[11] On this record, we find no error in the trial court's determination that appellants are procedurally barred from raising this claim because of failure to raise it in the trial court or on direct appeal. Nor did appellants provide the trial court with any cause for their failure to raise this claim timely. On appeal, they offer only counsel's conclusory assertions that they may not have known that they were entitled to a translation in their particular dialect of the Chinese language. Insofar as they rely on the ineffectiveness of appellate counsel in support of the translator issue, such claim must be raised by filing a motion to recall the mandate in the direct appeal.[12] *May-*

---

11. Section 31–2701, *et. seq.* has been recodified as D.C.Code § 2–1901, *et seq.* (2001).

12. The government concedes that the "cause and prejudice" test of *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C.1987) does

*field v. United States*, 659 A.2d 1249, 1252–53 (D.C.1995). Such claims may not be considered in connection with a motion to vacate judgment pursuant to § 23–110. *Id.* at 1253.

### C. Wu's Remaining Claims

#### 1. Ineffective Assistance of Counsel

 Appellant Wu claims that his trial counsel was ineffective for failing (1) to challenge identification evidence; (2) to call alibi witnesses; and (3) to file a motion to suppress identification.[13] We need address them only briefly. Wu could have raised all of these claims on direct appeal or in his first motion filed pursuant to § 23–110, instead of only in his second and third motions. Where a defendant fails to raise available challenges in his direct appeal, "he may not raise that issue on collateral attack unless he shows cause for his failure to do so and prejudice as a result of his failure." *Head, supra,* 489 A.2d at 451 (citations omitted). Wu was represented on appeal by new counsel; therefore, there was no conflict which would have prevented a fair presentation of his claims on direct appeal. Therefore, the claims are procedurally barred, and the trial court acted within its discretion in denying Wu's motions. *See Vaughn, supra,* 600 A.2d at 97; *Shepard, supra,* 533 A.2d at 1280.

Wu's reliance upon the alleged ineffectiveness of his appellate attorneys as cause for his failure to assert his claims in his direct appeal is insufficient in this appeal. The ineffectiveness of appellate counsel must be litigated as an independent claim, which requires a recall of the mandate of the direct appeal. *Mayfield, supra,* 659 A.2d at 1252–53.

 In any event, the trial court's decision on these claims, after the evidentiary hearing, is sufficiently supported by the record. Wu argued that trial counsel should have challenged the identification evidence. He claimed that the photo and slide arrays were unduly suggestive because they were comprised of Asian men of various ethnicities. The court made an independent assessment of the arrays and concluded that they were not unduly suggestive.[14] Further, the trial court credited trial counsel's testimony that he discussed his decision not to file a motion to suppress with Wu. This was a tactical decision made in consultation with Wu. A reasonable tactical decision will not support a claim of ineffectiveness of counsel. *See Washington v. United States,* 689 A.2d 568, 572 (D.C.1997). Even assuming that counsel was deficient in connection with the identification and suppression issues, Wu would still have to show prejudice arising out of counsel's deficient performance. *See*

not apply where an appellant is represented by the same lawyer in the trial court as on appeal and claims ineffective assistance of trial counsel. *See Sullivan v. United States,* 721 A.2d 936 (D.C.1998). While Yee was represented by the same counsel at trial and on appeal, he has made no claim of ineffective assistance of counsel in the trial court. Wu had new counsel on appeal.

13. Appellant Wu also raises for the first time on appeal a claim that the trial court's instruction on reasonable doubt was erroneous. This issue is, therefore, not before the court properly. *Young v. United States,* 639 A.2d 92, 97 n. 8 (D.C.1994). Even if it were prop-

erly before us, Wu cannot prevail on the claim. *See Minor v. United States,* 647 A.2d 770, 773–74 (D.C.1994) (no due process violation where court instructed erroneously that government is not required to establish guilt beyond all reasonable doubt, when other instructions made clear the proper standard of proof). Wu's challenge is essentially the same as the challenge in *Minor.*

14. The court also remarked at the hearing that co-defendant Yee had filed a motion to suppress identification and that the judge who heard it also concluded that the arrays were not unduly suggestive and denied the motion.

*Strickland, supra,* 466 U.S. at 687, 104 S.Ct. 2052; *Smith v. United States,* 686 A.2d 537, 545–47 (D.C.1996). Such prejudice cannot be shown where, as here, the motion if filed would not have been successful. *See Washington,* 689 A.2d at 572 (citing *Gooch v. United States,* 609 A.2d 259, 265 (D.C.1992)). The trial court found no undue suggestivity, and there is no basis to challenge its finding.[15]

■ Wu argues that the trial court erred in concluding that his counsel was not ineffective for failing to call alibi witnesses. After the evidentiary hearing at which the proposed alibi witnesses testified, the trial court found no credible evidence that they could have substantiated Wu's alibi. The trial court's factual findings are not clearly erroneous, therefore, we will not disturb them. As the trial court concluded, there is no basis for finding ineffectiveness for counsel's refusal to present testimony which was not helpful and which he suspected might be false. *See Tibbs v. United States,* 628 A.2d 638, 641 (D.C.1993). Further, Wu can show no prejudice, since the alleged alibi witnesses who testified at the § 23–110 hearing could not account for Wu's whereabouts at the time of the robbery.

### 2. *Double Jeopardy*

■ Finally, Wu appealed from the trial court's order denying his claim that the imposition of consecutive sentences on two armed robbery charges (counts B and C) violates the Double Jeopardy Clause of the Fifth Amendment. Wu filed the claim citing D.C.Code § 23–110. The trial court held that Wu was procedurally barred from raising this claim on collateral attack for failure to show cause and prejudice for not raising the claim on direct appeal.

Recently, this court held that a claim that the trial court imposed multiple punishments for a single offense in violation of the Double Jeopardy Clause under certain circumstances may be a claim that the sentence is illegal. *Brown v. United States,* 795 A.2d 56, 60 (D.C.2002). As such, it may be viewed as a motion to correct illegal sentence pursuant to D.C.Crim. R. 35(a) and not subject to the cause and prejudice showing customarily required for defaulted claims under § 23–110. *Id.* Nevertheless, Wu is not entitled to relief under Rule 35(a) because his sentence does not violate the Double Jeopardy Clause. Wu was convicted of six robbery offenses against six different victims. "Crimes do not merge if they are perpetrated against different victims." *Hanna v. United States,* 666 A.2d 845 (D.C.1995) (citing *Adams v. United States,* 466 A.2d 439, 443 n. 3 (D.C.1983)). *See also Black v. United States,* 755 A.2d 1005, 1009 (D.C. 2000)). Therefore, there is no bar to punishments for each of the separate offenses. *See id.*

For the foregoing reasons, the orders appealed from in all of these consolidated cases are hereby

*Affirmed.*

---

15. The trial court also declined to hear expert testimony to assist the court in discerning racial distinctions among those in the line-up. Whether to admit expert evidence is vested in the discretion of the trial court, and its ruling thereon will be upheld unless manifestly erroneous. *Taylor v. United States,* 451 A.2d 859, 866 (D.C.1982). Wu conceded that racial distinctions were not the major point. The trial court concluded that such testimony was not necessary to aid it in understanding the evidence. We find no abuse of discretion in the trial court's ruling in this regard.