*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CO-1166

DELONTA ROBERT ST. JOHN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF1-5712-07)

(Hon. Michael L. Rankin, Trial Judge)

(Submitted October 10, 2019                    Decided May 14, 2020)

Delonta Robert St. John, *pro se*.

*Jessie K. Liu*, United States Attorney, with whom *Elizabeth Trosman*, *Elizabeth H. Danello*, *Kendra Briggs*, *Vinet Bryant*, and *Steven B. Snyder*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, THOMPSON, *Associate Judge*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*: Appellant, Delonta Robert St. John, appeals the trial court's denial without a hearing of his *pro se* motions under D.C. Code § 23-110 (2012 Repl.) to vacate his convictions, asserting ineffective assistance of counsel by his trial counsel and unlawful suppression of material exculpatory

evidence by the government during his criminal trial.  We affirm.

## I.  Factual Background and Procedural Posture

On August 9, 2006, while gambling in a dice game, appellant argued with John Lucas over an outcome of the game and shot Lucas three times.  Lucas was taken to Prince George's Hospital on the same day, and Dr. Said Daee was a treating physician for Lucas.  On November 5, 2006, Lucas died from complications associated with his gunshot wound, for which Lucas's family filed a wrongful death suit against Prince George's Hospital and Dr. Daee on November 19, 2007, alleging negligent treatment by Dr. Daee.

Dr. Michael Wingate, an expert witness for Lucas's family and general surgeon, testified in the wrongful death suit on September 15, 2009, that Dr. Daee breached the standard of care in his treatment of Lucas, and that such breach was a cause of Lucas's death.  The Circuit Court for Prince George's County rendered a jury verdict against Dr. Daee and Prince George's Hospital on September 17, 2009.

The government had filed an indictment against appellant on September 4, 2007.  Before appellant's criminal trial, the government sent a letter on August 6,

2008, to appellant's trial counsel, Ronald Horton, disclosing the pending wrongful death suit against Dr. Daee for Lucas's death and Dr. Daee's scheduled testimony during the criminal trial. On February 12, 2009, Dr. Daee testified in appellant's criminal trial that appellant's bullet lacerated Lucas's pancreas and that Lucas died from complications from his gunshot wound.

After a jury trial, on February 19, 2009, the trial court convicted appellant of second-degree murder while armed under D.C. Code §§ 22-2103 (2012 Repl.), -4502 (2012 Repl.), possession of a firearm during a crime of violence under D.C. Code § 22-4504(b) (2012 Repl.), and carrying a pistol without a license under D.C. Code § 22-4504(a). Appellant did not raise claims of ineffective assistance of counsel nor violations under *Brady v. Maryland*, 373 U.S. 83 (1963), during his direct appeal. This court affirmed appellant's convictions on October 4, 2012.

On June 3, 2016, appellant filed his *pro se* motion for relief under D.C. Code § 23-110. In his motion, he alleged ineffective assistance of his trial and appellate counsels, in violation of the Sixth Amendment, for failure (1) to apprise appellant of the wrongful death suit against Dr. Daee and (2) to investigate a cause of Lucas's death, namely Dr. Daee's alleged gross negligence. Furthermore, in his supplemental motion for relief under D.C. Code § 23-110, he asserted that the

government violated his constitutional rights by suppressing material exculpatory evidence—or in his vocabulary, "newly discovered evidence"—that Dr. Daee was grossly negligent and by presenting false testimony of Dr. Daee at appellant's criminal trial.

The government argued, squarely refuting appellant, that his claims of ineffective assistance of counsel and unconstitutional suppression of evidence by the government were procedurally barred because appellant should have raised the same claims in his direct appeal, and that he failed to show any cause or prejudice to excuse his procedural default.

The trial court denied appellant's § 23-110 motions without a hearing on October 10, 2018, and this appeal ensued.

## II. Standard of Review

We review a trial court's denial of a motion for relief under D.C. Code § 23-110 without a hearing for abuse of discretion. *Thomas v. United States*, 772 A.2d 818, 824 (D.C. 2001); *Sykes v. United States*, 585 A.2d 1335, 1340 (D.C. 1991).

We consider each § 23-110 assertion in turn and hold that the trial court did not abuse its discretion in either instance because the "motion[s] and files and records of the case conclusively show that the [appellant] is entitled to no relief." D.C. Code § 23-110.

### III.    Analysis

### A. Procedural Bar

D.C. Code § 23-110 "is not designed to be a substitute for direct review." *Head v. United States*, 489 A.2d 450, 451 (D.C. 1985).  Therefore, if appellant did not raise a claim of ineffective assistance of counsel under that statute and he "demonstrably knew or should have known of the grounds for" the claim on direct appeal, appellant's claims are procedurally barred.  *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987).  Likewise, if appellant did not raise a claim of *Brady* violations that he "knew or should have known of" on direct appeal, appellant's claim of *Brady* violations is procedurally barred.  *Wright v. United States*, 979 A.2d 26, 31 (D.C. 2009).

**B. Cause and Prejudice**

1. Ineffective Assistance of Counsel

Appellant may overcome a trial court's procedural bar and still raise an ineffective assistance of counsel claim by showing both cause for failure to raise such claim in direct appeal and "actual prejudice resulting from the errors of which [appellant] complains." *United States v. Frady*, 456 U.S. 152, 167-68 (1982). When appellant claims ineffective assistance of counsel, our analysis of a procedural bar is inextricably linked to the merits of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Washington v. United States*, 834 A.2d 889, 904 n.10 (D.C. 2003).

However, it is "unnecessary to determine whether [appellant] has shown cause" if this court finds no prejudice to appellant. *Frady*, 456 U.S. at 168 (finding no need to determine whether appellant had shown cause where there was no actual prejudice from alleged ineffective assistance of counsel). When an alleged unconstitutional error by counsel is failure to investigate and discover favorable evidence to defense, our analysis of the prejudice part of *Strickland* is twofold: (1)

"whether there is a reasonable probability that a competent attorney, aware of the favorable evidence, would have introduced it at trial in an admissible form," and (2) "whether, had the jury been confronted with this . . . evidence, there is a reasonable probability that it would have returned with a different verdict." *Cosio v. United States*, 927 A.2d 1106, 1132 (D.C. 2007) (internal quotations and brackets omitted); *see also Brown v. United States*, 181 A.3d, 164 (D.C. 2018). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Frady*, 456 U.S. at 170.

In general, negligent medical treatment of a "dangerous wound" – a wound from which a victim would die if untreated – is deemed a foreseeable consequence of appellant's crime and is not a defense to a charge of homicide. *Baylor v. United*, 407 A.2d 664, 668-69 (D.C. 1979) (holding that two-hour delay in treatment of victim and negligent lacerations of victim's pancreas were not defense to charge of involuntary manslaughter because such negligence was still foreseeable consequence of appellant's crime); *see also McKinnon v. United States*, 550 A.2d 915, 917-18 (D.C. 1988) (holding that victim's contraction of uncommon type of hepatitis from surgery to treat stabbing wounds was reasonably foreseeable consequence of defendant's criminal assault, and, thus, was not intervening cause). Ordinarily, this court requires expert medical testimony to

show that a wound was not in itself dangerous. *Baylor*, 407 A.2d at 669. Gross negligence in medical treatment may exculpate appellant, but it must have been a sole cause of a victim's death. *Id.*

Here, we hold that the trial court did not err by finding no prejudice to appellant under *Strickland*. In view of our precedent discussed below, there is less than a reasonable probability that a competent attorney, aware of the wrongful death suit against Dr. Daee, would have introduced Dr. Daee's negligence as exculpatory or impeachment evidence at trial.

Although we did not reach the prejudice part of *Strickland* in *Brown*, the decision is instructive. In *Brown*, this court held that the failure by four counsel to investigate the mental condition of and to plead an insanity defense for appellant, who was serving a life sentence for the three convictions including a first degree murder from 1990's, was not objectively unreasonable. To highlight the ineffective assistance of the four counsel from 1990's to observe his mental condition, appellant in *Brown* raised the testimony of a psychiatric expert from his California criminal trial in 2008, for assault on a prison guard, that appellant suffered post-traumatic stress disorder. However, this court squarely refuted that the expert's 2008 insanity diagnosis of appellant was not evidence of his mental

state in the 1990's, and thus held the four counsel's performance was not ineffective.

Like appellant in *Brown*, appellant here raised the testimony of Dr. Wingate to highlight the asserted ineffective assistance of the trial counsel to plead an intervening-cause defense. We hold not only that it was temporally impossible for the trial counsel to introduce—or the government to withhold from appellant—Dr. Wingate's testimony in appellant's criminal trial, but also that even if appellant's trial counsel somehow foresaw Dr. Wingate's testimony and still decided not to pursue an intervening-cause defense, the decision would not have rendered the trial counsel's performance ineffective under *Strickland*.

Under our precedent, there is certainly less than a reasonable probability that a jury would have found—or a competent attorney would have introduced—Dr. Daee's negligence as an intervening cause. Both Dr. Daee and Dr. Wingate testified that the bullet appellant shot damaged Lucas's pancreas, from which the complications arose; therefore, Dr. Daee's alleged gross negligence was certainly not a sole cause of Lucas's death. Even if appellant had introduced Dr. Wingate's testimony during his criminal trial—which was temporally impossible because Dr. Wingate testified in the wrongful death suit after the guilty verdict against

appellant in his criminal trial—Dr. Daee's alleged gross negligence would not have exculpated appellant.

In *Baylor*, this court affirmed that a two-hour delay in treatment of the victim and negligent laceration by a doctor during an operation on the victim were not an intervening cause, and, thus, did not relieve appellant of responsibility for the victim's death. *Baylor*, 407 A.2d at 670. In *McKinnon*, we affirmed that the rare type of hepatitis the victim contracted from surgery to cure stabbing wounds was not an intervening cause. *McKinnon*, 550 A.2d at 917-18. Similarly, here, we see no error in the trial court's conclusion that Dr. Daee's treatment was not an intervening cause of Lucas's death.

Because appellant has failed to show "prejudice," we hold that the trial court did not abuse its discretion by denying, without a hearing, appellant's ineffective assistance of trial counsel[1] claim under D.C. Code § 23-110.

---

[1] We do not reach the merits of appellant's ineffective assistance of *appellate* counsel claim because a claim of ineffective assistance by appellate counsel "must be litigated as an independent claim, which requires a recall of the mandate of the direct appeal." *Wu v. United States*, 798 A.2d 1083, 1091 (D.C. 2002) (citation omitted).

2. *Brady* Violations

We also affirm the trial court's determination of a procedural bar on appellant's *Brady* claim under D.C. Code § 23-110 because appellant simply cannot show "cause and prejudice" from the government's alleged *Brady* violations.

Violation of due process under *Brady* occurs (i) "when the prosecution fails to disclose, before or during trial, evidence favorable to the defense," and (ii) "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *United States v. Bagley*, 473 U.S. 667, 682 (1985). "[N]on-disclosure of evidence affecting credibility" falls within the purview of the *Brady* rule. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Here, not only did the government disclose the pending wrongful death suit against Dr. Daee before appellant's criminal trial, but it was temporally impossible for the government to withhold or suppress Dr. Wingate's testimony against Dr. Daee's negligence because Dr. Wingate testified in the wrongful death suit against Dr. Daee on September 15, 2009, after the jury verdict against appellant on

February 19, 2009.  Thus, we hold that there was no abuse of discretion by the trial court in procedurally barring appellant's *Brady* and *Giglio* claims.

### C. § 23-110 Hearing

1.  <u>Ineffective Assistance of Counsel</u>

On the present record, we hold that appellant's ineffective assistance of counsel claim furnishes no ground for us to provide relief.  Appellant's "newly discovered evidence" can be discovered in this very record.  Although there is a presumption for holding a hearing under D.C. Code § 23-110, appellant's claim is less than middling.  For the reasons stated in previous sections of this opinion, we hold that his claims are based on vague and conclusory allegations, not one of which warrants any relief to appellant.  Accordingly, we affirm the trial court's decision not to hold a hearing for appellant's ineffective assistance of counsel claim and the denial of relief.

2.  <u>*Brady* Violations</u>

Since the motions, files, and records of this case conclusively show that appellant is not entitled to collateral relief, we affirm the trial court's decision without a hearing on appellant's *Brady* and *Giglio* claims.

## IV.    Conclusion

The decision of the trial court is affirmed.

*So ordered.*