**Pedro E. REDMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–733.**

District of Columbia Court of Appeals.

Submitted Oct. 28, 1992.
Decided Nov. 10, 1992.

Marvin B. Bartlett, appointed by the court, filed a brief, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, Cathleen M. Corken and Anthony Asuncion, Asst. U.S. Attys., filed a brief, for appellee.

Before SCHWELB, FARRELL and SULLIVAN, Associate Judges.

SCHWELB, Associate Judge:

Redman, a native of the Dominican Republic who required an interpreter at trial,

was convicted by a jury of distribution of a controlled substance, in violation of D.C.Code § 33–541(a) (1988). He was sentenced to a term of imprisonment of no less than five and no more than thirty years, with a mandatory minimum term of five years.[1] Redman's conviction followed his participation with a codefendant in the sale of several rocks of crack cocaine to an undercover officer of the Metropolitan Police Department. On appeal, Redman contends that the trial judge committed plain error by failing to make a preliminary determination that the court-appointed interpreter was competent to communicate with him and to translate information for him. We find error but no plain error, and accordingly affirm.

## I

■ Although Redman is apparently able to speak some English,[2] the trial judge ordered that he be provided at trial with the services of a qualified interpreter. *See* D.C.Code § 31–2711(c)(1) (1988); Super.Ct.Crim.R. 28(b). The interpreter carried out his duties throughout the proceedings without incident and without any complaint from Redman. Redman's appeal, however, is based on the trial judge's failure to comply with the District of Columbia Interpreter Act of 1987, D.C.Code § 31–2701 *et seq.* (1988), and specifically with § 31–2704, which provides that

[b]efore appointing an interpreter, an appointing authority shall make a preliminary determination that the interpreter is

able to accurately communicate with and translate information to and from the communication-impaired person involved.[3]

Redman contends that no such preliminary determination was made, and the government effectively concedes that this is true. Redman argues that in light of the court's failure to assure the qualifications of the interpreter, he was rendered incompetent to stand trial[4] and to waive his right to testify on his own behalf. *See Boyd v. United States,* 586 A.2d 670, 672–74 (D.C. 1991); *cf. Rock v. Arkansas,* 483 U.S. 44, 49–52, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987).

In spite of his counsel's conclusory assertions, however, there is nothing in the record before us to suggest that the interpreter, who was duly sworn, rendered anything less than a faithful translation of all that was said. Moreover, Redman has made no effort to augment the record, by collateral proceedings or otherwise, to show that he did not understand the proceedings or that he was in fact prejudiced in any way. Under these circumstances, we are not disposed to disturb his conviction.

Not once during trial, as we have noted, did Redman question the adequacy of the interpreter. As the court stated in *United States v. Nazemian,* 948 F.2d 522, 528 (9th Cir.1991),

[a]lthough the government presented no formalized evidence of the interpreter's competence, such as language degrees or certifications, *the fact that the inter-*

---

1. The parties agree that the mandatory minimum sentence applicable to Redman is four years. *See* D.C.Code § 33–541(c)(1)(A–2)(i) (1988). The case must therefore be remanded for resentencing.

2. According to Redman's brief, "[a]ppellant Redman, born in the Dominican Republic, is a registered Resident Alien in the United States. Although he has received some schooling in the United States, his command of the English language is limited."

3. A "communication-impaired person" includes a person who does not speak English. A "non-English speaking person" is defined, in turn, as

a person who is unable to readily understand oral and written communications in the En-

glish language or who cannot communicate effectively in the spoken English language. *Id.* § 31–2701(4). The government does not dispute the applicability of § 31–2704 to the present case.

For a more detailed discussion of the Interpreter Act, *see Barrera v. United States,* 599 A.2d 1119, 1130–33 (D.C.1991).

4. Redman argues in his brief that

Spanish, no less than any other language, is rich in its diversity; it may be next to impossible for a speaker from one part of the globe to communicate with [one from] another. Because of [Redman's] inability to accurately understand information relayed to him at trial by the court-appointed interpreter, he was denied due process.

*preter continued in that role ... suggests that the translation must have been competent enough to allow communications between the parties.*

(Emphasis added).

■ In failing to raise the issue at trial, Redman waived his right to question the competence of the interpreter. Like other complaints about the conduct of a trial, such a challenge may be waived if it is not raised in a timely fashion. *United States v. Villegas,* 899 F.2d 1324, 1348 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990). Indeed, basic considerations of fairness demand no less. The court made the point effectively in *Valladares v. United States,* 871 F.2d 1564, 1566 (11th Cir.1989):

> Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. *To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.*

(Emphasis added.) Courts in this jurisdiction have expressed similar concerns in comparable situations. *See, e.g., Lopez v. United States,* 615 A.2d 1140, 1142 & n. 3 (D.C.1992); *Hunter v. United States,* 606 A.2d 139, 144 (D.C.1992); *Hensley v. United States,* 108 U.S.App.D.C. 242, 281 F.2d 605, 608 (1960).

■ Redman acknowledges with commendable candor that, in the absence of any objection in the trial court to the performance of the interpreter, we review only for "plain error." *See Watts v. United States,* 362 A.2d 706, 708 (D.C.1976) (en banc). Under the "plain error" standard, we may disturb the judgment below only to avoid a miscarriage of justice. *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *Hunter, supra,* 606 A.2d at 141.

■ In the present case, Redman was identified as one of the sellers, within minutes of the sale, by the undercover officer who had just bought the drugs, and who had an excellent opportunity to observe him. The force of the officer's identification was enhanced by the recovery from Redman's person of the two twenty dollar bills (with pre-recorded serial numbers) which the officer had used to purchase the cocaine. Neither Redman nor his codefendant testified, and the largely uncontradicted prosecution case, if credited by the jury, was compelling.

Given the lack of any suggestion in the record that the judge's failure to make a preliminary determination of the interpreter's competence prejudiced the defense in any way, Redman has not satisfied the "plain error" rule's "miscarriage of justice" requirement. Indeed, reversal of a conviction such as this one, notwithstanding the absence of prejudice, on grounds so unrelated to the issue of guilt or innocence, would tend to undermine public confidence in the judiciary. *See, e.g., Allen v. United States,* 603 A.2d 1219, 1228 & n. 19 (D.C. 1991) (en banc); *see also Lopez, supra,* at 1147.

Accordingly, the case is remanded to the trial court for resentencing. See note 1, *supra.* In all other respects, Redman's conviction must be and it is hereby affirmed.

*So ordered.*