Efrain RAMIREZ, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–792.

District of Columbia Court of Appeals.

Argued Nov. 10, 2004.
Decided June 16, 2005.

 

Kenneth H. Rosenau, appointed by the court, Washington, for appellant.

Thomas S. Rees, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Kelly A. Higashi, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, REID, Associate Judge, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

Efrain Ramirez, a Spanish-speaking immigrant from El Salvador, was acquitted of a rape-related charge but convicted by a jury of assault with a dangerous weapon. At his trial, four errors in translation during his testimony were detected by the Spanish-speaking prosecutor and defense counsel and corrective action was taken. Although no further action was sought by Ramirez, he now claims on appeal that the trial court committed reversible error by failing sua sponte to conduct a voir dire into the interpreter's competence. Given the circumstances here, we disagree and affirm the conviction.

## I.

Two conflicting stories were presented to the jury by the complainant, a George Washington University student, and Ramirez. According to the complainant, on February 8, 1999, she let Ramirez—whom she recognized as a maintenance worker in her building—into her apartment to perform maintenance work. After inspecting the pipes, Ramirez locked the complainant's front door and asked her to go on a date with him. When the complainant refused, Ramirez began punching and shoving her, forcing her to the ground, and eventually to her bed. At one point during the struggle, the complainant grabbed a knife, which Ramirez wrested from her, injuring them both. Ramirez then attempted to rape the complainant, but could not maintain an erection. After several unsuccessful attempts at penetration, Ramirez washed the blood off himself in the complainant's shower and took the bedding (which was stained with blood from the struggle) from the complainant's bed. Ramirez instructed the complainant not to tell anyone what had happened, gave her $50.00 and left the apartment. The complainant then sought help from her neighbors, who contacted emergency services.

In contrast, Ramirez testified in Spanish, through a court-appointed interpreter, that he had a prior sexual relationship with the complainant, and that he had given her $100.00 after each prior encounter. According to Ramirez, he went to the complainant's apartment on the day in question at her request, where they had consensual sex; however, he was only able to give her $50.00. The complainant was angered by the reduced payment and slapped Ramirez, who slapped her in return. This escalated to a violent exchange during which the complainant grabbed a kitchen knife, which Ramirez wrested from her, cutting them both. Both parties sustained injuries, and Ramirez left the apartment and cleaned up at home.

The jury acquitted Ramirez of the charge of assault with intent to commit first-degree sexual assault while armed, but convicted him on the lesser-included

charge of assault with a dangerous weapon.[1]

## II.

Pursuant to the District of Columbia Interpreter Act, D.C.Code §§ 2–1901 *et seq.* (2001) (formerly §§ 31–2701 *et seq.*), a Spanish-speaking interpreter was provided for Ramirez at trial. During his direct examination, Ramirez's defense attorney, Ms. Pita–Loor, who was also Spanish-speaking,[2] questioned him about his first substantive conversation with the complainant as follows:

Q: Who was working with you?

A: Three people came to work in that apartment.

Q: Was Jose working with you?

A: Yes, he was with us.

. . .

Ms. Pita–Loor: There was an interpreter mistake, he actually-Mr. Ramirez actually said he was with me, and the translator, the interpreter translated he was with us.

Defense counsel was permitted to ask a question to clarify, which she did.

Later in the examination, a second mistranslation was brought to the trial court's attention during defense counsel's questioning of appellant about the complainant's putting a cover[3] over the bed:

Q: Now, how—how was that cover placed on the bed?

A: She didn't extend it well, it was kind of heap, it was one side or just in one piece, it was not extended, it was folded. That's what he means.

Q: Was it folded perfectly?

A: No, no, it was not.

Q: How was it?

A: It wasn't extended, total extended, it was like in the middle, one place in the middle, one place in the middle of the bed.

. . .

Ms. Pita–Loor: Again, Your Honor, I just want to alert the Court to another translation problem, interpreting problem. The words he used were bunched up, that would be the proper translation in English.

Defense counsel was again permitted to clarify this point to the jury through additional questioning.

Later in the examination, Ramirez was testifying about cleaning up in the bathroom, saying "I went to take a bath." In describing two previous incidents, Ramirez had been translated as having said that he took a "shower." Defense counsel informed the court:

Ms. Pita–Loor: Your Honor, in Spanish a lot—a lot of times you just use bath, and Mr. Ellerman [a prosecutor] can probably say this since he speaks Spanish, and it means—bagnio [phonetic] means both shower and bath. Mr. Ellerman: He's been saying bagnio each time and she translates it as shower, I noticed that earlier.

Again, Ramirez was also permitted to explain to the jury, through questioning, that he specifically used the shower to clean himself after having attempted to have sex with the complainant.

---

1. In a prior trial involving the same incident, Ramirez had been acquitted of the charge of first-degree burglary, but the jury had hung on the assault charge that led to the second trial.

2. No issue is raised on appeal as to the fluency of both Ms. Pita–Loor and one of the prosecutors, Mr. Whitney Ellerman, in the

Spanish language. Under the Act, if needed, Ramirez would have been entitled to the appointment of a qualified interpreter "to assist in communication with counsel in all phases of the preparation and presentation of the case." D.C.Code § 2–1902(b).

3. This "cover" was later referred to in the testimony as a "comforter."

Finally, during cross-examination, Mr. Ellerman (the prosecutor who spoke Spanish)[4] alerted the trial court to an omission on the part of the interpreter:

Q: Now that day in October, 1998 when you say you had sex with [the complainant], what kind of sheets did she have on her bed?

A: I didn't see.

. . .

Mr. Ellerman: [Appellant] actually gave two answers. First he said [the complainant] didn't have any then he said I didn't see any. The translator only gave the second answer.

The government was permitted to ask the question again, to which appellant responded, "I didn't pay attention. I don't know." The trial continued without further incident involving translation. No counsel on either side asked for any further inquiry into the interpreter's qualifications or for any further action to be taken by the trial court.

### III.

■ "If a defendant who is unable to speak and understand English is compelled to face criminal charges without access to effective translation of the proceedings by a competent and impartial interpreter, then his ability to present a defense may be substantially undermined, and there is a serious possibility of grave injustice." *Ko v. United States*, 722 A.2d

830, 834 (D.C.1998) (en banc), *cert. denied*, 526 U.S. 1094, 119 S.Ct. 1512, 143 L.Ed.2d 664 (1999) (quotation omitted). As we further expounded in *Ko*, in order to vindicate the constitutional rights of such a defendant, the Council of the District of Columbia in 1988 enacted the Interpreter Act, now codified at D.C.Code § 2–1901 *et seq.* (2001). *Id.* at 834–35. Among its other provisions, the Act provides that when a "communication-impaired person"[5] is a defendant in a criminal proceeding, the trial court may, and on request must, appoint a "qualified interpreter" to interpret the proceedings to the communication-impaired person and to interpret the communication-impaired person's testimony. § 2–1902(a).

A "qualified interpreter" is defined as "a person who is listed by the Office of Interpreter Services as being skilled in the language or form of communication needed to communicate accurately with a communication-impaired person and who is able to translate information to and from the communication-impaired person." § 2–1901(5).[6] To further insure the fitness of the individual interpreter with respect to the specific communication-impaired person, the Act requires that prior to appointing the interpreter, the trial court must make "a preliminary determination that the interpreter is able to accurately communicate with and translate information to and from the communication-impaired person involved." § 2–1904.[7]

---

4. There were two prosecutors in the case, Mr. Ellerman and Ms. Kelly Higashi, who was doing the actual cross-examination. Likewise, appellant had two attorneys from the Public Defender Service, one of whom, Ms. Pita–Loor, spoke Spanish.

5. This term is defined as meaning "a person whose hearing is impaired or who does not speak English." § 2–1901(2).

6. Section 2–1911 sets out in considerable detail the duties and responsibilities of the Of-

fice of Interpreter Services so as to insure qualified interpreters. Although no such government-wide office now exists, there is a functionally equivalent D.C. Courts' Office of Court Interpreting Services with respect to the work of the D.C. Courts. *See Mesa v. United States*, 875 A.2d 79, 90–91 (D.C.2005).

7. The record before us does not specifically show that the trial court in this case undertook this step, but Ramirez's brief makes no argument that this was not done and we therefore proceed on the assumption that the

 Although a defendant is entitled to "an interpreter who is 'competent to render accurate translations,'" this right "'may be waived if it is not raised in timely fashion.'" *Gonzalez, supra* note 7, 697 A.2d at 822 (quoting *United States v. Villegas*, 899 F.2d 1324, 1348 (2d Cir.), *cert denied*, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990) and *Redman v. United States*, 616 A.2d 336, 338 (D.C.1992)). The defendant must make the court aware of any difficulties with the translator, since "to allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse." *Redman, supra*, 616 A.2d at 338 (quoting *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989)). This court reviews the trial court's determination of the competence of an interpreter for abuse of discretion where the translation difficulties have been made known to the trial court. *Gonzalez, supra*, 697 A.2d at 824–25.

 Although no objection was raised to the manner in which the trial court handled the correction of the interpretive errors raised during the course of his testimony, nor was any further inquiry into the interpreter's qualifications requested by his counsel, Ramirez now argues that the trial court had the duty sua sponte to engage in such a further investigation. He points out that the interpreter is an official appointed by the court,[8] and it should be particularly vigilant when possible deficiencies in such an official's performance are brought to the court's attention, just as

would be the case for a court clerk or marshal. Ramirez analogizes the situation to that presented where possible deficiencies in defense counsel's preparation are brought to the attention of the trial court pre-trial and we have mandated a duty on the trial court to engage in an immediate pre-trial determination of the adequacy of the preparation. *See Monroe v. United States*, 389 A.2d 811 (D.C.1978); *Farrell v. United States*, 391 A.2d 755 (D.C.1978). He observes that a requirement that trial courts engage in a similar investigation with respect to interpreters, whose qualifications during trial may be open to question because of detected errors in interpretation, would forestall the possibility of claims such as are now being made on appeal. Further, he argues, if such an inquiry is not undertaken, this court should remand for such an inquiry, as is done in cases where a trial court has failed to engage in the mandated Monroe–Farrell inquiry. *See Monroe, supra*, 389 A.2d at 822–23; *Nelson v. United States*, 601 A.2d 582, 592 (D.C.1991).

It is undoubtedly true that a trial court should be sensitive to the importance of accuracy in interpretation during a trial and not hesitate to take needed action with respect thereto. But we do not think that appellant's "one size fits all" approach is appropriate in determining whether a trial court has abused its discretion in dealing with a situation where errors have been detected in an interpreter's translation. The determination of an abuse of discretion in such circumstances must take into

---

trial court undertook this duty. In this respect, the current appeal differs from *Gonzalez v. United States*, 697 A.2d 819 (D.C.1997), where admittedly the trial court had erred in not making such a pretrial determination of the interpreter's qualifications and the issue arose whether the trial court committed reversible error in not doing so sua sponte when a translation error was detected during

the trial. In any event, in *Gonzalez*, we concluded that the error was harmless and we would come to a similar conclusion on the record here.

**8.** By a 1998 administrative order, all interpreters in criminal cases are appointed by the court and compensated by the court. *Ko, supra*, 722 A.2d at 836.

account the precise factual situation faced by the trial court, with an appreciation of its "on the scene" advantage.

■ In the appeal now before us, the trial court was far from on its own in facing the issue of interpretation.[9] Counsel on both sides were Spanish-speaking, which indeed led to the detection of the four instances brought to the court's attention. None of the errors was of any major import, and each of them was promptly dealt with by the trial court in a manner in which both counsel acquiesced.[10] It is true that counsel had many other matters to occupy their attention beyond the correctness of interpretation,[11] but it could be expected that counsel would be paying particular care to the translated testimony of the defendant himself.[12] All other witnesses, with one exception, testified in English.[13] As described above, the interpreter had already been found qualified under the procedures specified in the Act. While the trial court could very well have ventured sua sponte into yet another examination of the interpreter's qualification, nonetheless in the circumstances here, absent

any request by counsel, we are quite unable to say that the trial court abused its discretion by not taking any further action.[14] Accordingly, the judgment appealed from is

*Affirmed.*

---

9. Nor was the defendant on his own, as is the case in a *Monroe–Farrell* situation where the defendant is complaining of his own counsel's ineffectiveness.

10. In *Ko* itself, "there were one or two minor instances in which the accuracy of the interpretation was questioned," but "no material flaws in the translation" were shown in the record. 722 A.2d at 836.

11. In this case, however, as already noted, both the defense and the prosecution were represented by two attorneys, one Spanish-speaking, the other not. See note 4, *supra.*

12. For this reason, we are not persuaded by Ramirez's purely speculative argument that even if the detected errors were minor, other material errors in interpretation may have occurred. We were informed at oral argument that counsel for Ramirez had tried unsuccessfully to obtain tapes of the trial to

explore further the accuracy of the translations.

13. Tong Kim, Ramirez's employer, testified through a Korean interpreter.

14. In his brief, Ramirez asserts two other grounds for reversal, both of which we find to lack merit. First, he asserts that the trial court limited cross-examination of the complainant about a vibrator, but the record reflects no such limitation once counsel promised in opening statement that appellant would testify on the subject. Second, he argues that the trial court erred in declining to admit as substantive evidence portions of transcripts from the first trial, in which the complainant testified regarding Ramirez's truck. However, the record demonstrates that defense counsel thoroughly brought out the alleged inconsistencies, including reading the prior testimony verbatim, so that any error was harmless.