No. 2--05--0699          Filed: 3-30-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--2253 |
| JOSE L. CRUZ, | ) ) ) | Honorable Christopher C. Starck, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Jose L. Cruz, entered a guilty plea in the circuit court of Lake County to a single count of first degree murder (720 ILCS 5/9--1(a)(1) (West 2002)) in connection with the stabbing death of Elda Portela. Portela was defendant's brother's widow. In exchange for defendant's plea, the State agreed that his sentence would not exceed 55 years' imprisonment. The trial court sentenced defendant to a 47-year prison term, and defendant filed a timely motion to withdraw his guilty plea and vacate the judgment. The trial court denied the motion, and this appeal followed. We affirm.

Defendant is a citizen of Honduras and he was living in the United States illegally at the time of the offense. Defendant was assisted by an interpreter throughout the proceedings, including the hearing at which he entered his guilty plea. According to the presentence investigation report (PSI) prepared after defendant entered his plea, defendant's brother had been murdered in Central America,

and defendant believed that Portela had been involved in that crime. Defendant killed Portela to avenge his brother's death. He also stated that he had consumed a substantial quantity of alcohol before the killing. The PSI indicated that after being arrested, defendant submitted to a psychological assessment conducted by Dr. James Choca, who found (according to the PSI) that defendant was "mildly mentally retarded." After learning of Dr. Choca's finding, the trial court ordered John V. Dunne, Ph.D., Director of the Division of Psychological Services of the Administrative Office of the 19th Judicial Circuit, to perform a mental health evaluation to determine whether defendant had been fit to enter his guilty plea. Dr. Dunne concluded that defendant had been fit to enter the plea. (In conjunction with Dr. Dunne's assessment, Dr. Nidelia Welles administered an IQ test to defendant; however, it appears that the record does not include the results of the test.) After sentencing, defendant moved to withdraw his plea, asserting, inter alia, that the interpreter assisting him at the guilty plea hearing was incompetent. Defendant claimed that the interpreter had translated too swiftly, and defendant was thus impaired in his understanding of the proceedings.

A defendant has no absolute right to withdraw a guilty plea but, rather, must establish some recognized basis for withdrawal. People v. Mercado, 356 Ill. App. 3d 487, 494 (2005). The trial court's ruling on a motion to withdraw is reviewed under an abuse of discretion standard. Mercado, 356 Ill. App. 3d at 494. Defendant argues that the guilty plea hearing violated his right to due process of law because he is not fluent in English, and although the court provided an interpreter, the record does not establish either the identity or the qualifications of the interpreter, and the interpreter was not sworn to truly interpret the proceedings, as provided under section 2 of the

Criminal Proceeding Interpreter Act (Act) (725 ILCS 140/2 (West 2004)). Defendant contends that he is therefore entitled to withdraw his guilty plea.

To comport with the requirements of due process, a guilty plea must be knowing and voluntary. People v. Young, 355 Ill. App. 3d 317, 322 (2005). Due process additionally requires that the record affirmatively show that the plea was knowing and voluntary. People v. Jones, 174 Ill. App. 3d 794, 797 (1988), citing Boykin v. Alabama, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). According to defendant, his lack of fluency in English required the appointment of a qualified and properly sworn interpreter to ensure that he understood the proceedings. Although an interpreter was present at the hearing at which defendant entered his guilty plea, defendant is correct that the record does not disclose the interpreter's identity or qualifications, and the interpreter was not placed under oath as required under section 2 of the Act.

Under section 1 of the Act, the interpreter must be someone "whom [the accused] can understand and who can understand [the accused]." 725 ILCS 140/1 (West 2004). The statute does not prescribe any formal qualifications or credentials and, as defendant acknowledges, does not require that the record disclose the interpreter's qualifications. Defendant asserts, however, that "due process requires that the record include some indication of the competency and credentials of the interpreter." Defendant cites no authority for this proposition, but it is arguable, perhaps, that it is a corollary of the constitutional requirement that the record establish the voluntariness of the defendant's plea. Defendant also contends that because of his low IQ, it was particularly important that he have the assistance of a skilled interpreter. In addition, defendant emphasizes that Spanish is spoken differently in different regions, and the record does not show that the interpreter was capable of communicating in Spanish as spoken in Honduras.

At the time he entered his plea, defendant did not object to the failure to inquire into the interpreter's identity and qualifications and to place her under oath. Nor did defendant specifically raise these issues in his motion to withdraw his guilty plea, which essentially challenged the interpreter's performance rather than her qualifications as such. Defendant raises these issues for the first time on appeal. To preserve an issue for review, a defendant must object in the trial court. People v. Lewis, 223 Ill. 2d 393, 400 (2006). In the absence of a proper objection, an error is ordinarily subject to review only if it rises to the level of plain error. "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." People v. Hall, 194 Ill. 2d 305, 335 (2000). Courts in other jurisdictions have held that absent a timely objection, a defendant complaining that the trial court failed to determine an interpreter's qualifications or failed to administer an oath to the interpreter must show plain error. See United States v. Paz, 981 F.2d 199 (5th Cir. 1992) (failure to inquire as to interpreter's credentials); Redman v. United States, 616 A.2d 336 (D.C. 1992) (same); United States v. Perez, 651 F.2d 268 (5th Cir. 1981) (failure to administer oath).

Because defendant pleaded guilty, no evidence was presented, so the first part of the plain error test does not apply. Therefore, the salient question is whether the failure to inquire into the interpreter's identity and qualifications and to place her under oath was error that affected the fundamental fairness of the proceeding and compromised the integrity of the judicial process. In Paz, the court considered whether the trial court's failure to determine (a) whether an uncertified

interpreter was competent, and (b) whether the defendant could comprehend the English language, was plain error, defined by the court as " 'error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings.' " Paz, 981 F.2d at 201, quoting United States v. Lopez, 923 F.2d 47, 50 (5th Cir. 1991). This definition of plain error is substantially similar to the definition under Illinois law; thus we look to Paz for guidance in determining whether plain error occurred in this case. In Paz, the court concluded that the failure to determine the interpreter's qualifications was not plain error:

> "Neither [the defendant] nor her attorney ever indicated below that the interpreter was inadequate. Also, nothing in the record reflects, and [the defendant] never asserted below, that she could not understand the proceedings; and throughout the proceedings the court's inquiries to [the defendant] were fully answered by her without any indication that she was experiencing any difficulty comprehending the court. When the trial court asked if [the defendant] could 'understand the proceedings today,' her attorney responded that she could. [The defendant] stated that she was satisfied with her attorney and acknowledged that she had read the plea agreement with her counsel, that she understood it, and that she voluntarily agreed to it. Her attorney also acknowledged that [the defendant's] decision to enter into the plea agreement was 'an informed and voluntary one.' Finally, when asked by the trial court at the close of the proceedings if there was anything further, [the defendant's] attorney replied that there was not. The record simply does not indicate that the interpreter was inadequate or that [the defendant] lacked comprehension." Paz, 981 F.2d at 201.

It is true that in Paz the record tended to indicate that the defendant had at least a working knowledge of the English language and did not even need an interpreter (Paz, 981 F.2d at 201 n.3), which is apparently more than can be said in this case. However, without discounting the significance of the defendant's understanding of the English language in Paz, it is also fair to say that her familiarity with the language was not essential to the court's decision. Rather, the critical issue was her comprehension of the consequences of her plea. Viewing this case from the same vantage point leads to the same outcome: defendant sufficiently understood the consequences of his plea, and thus the failure to identify the interpreter, inquire into her qualifications, and place her under oath did not amount to plain error.

In determining whether defendant's plea was voluntary, the trial court asked defendant a series of questions about his understanding of the rights he was waiving by pleading guilty; his understanding of the punishment that might be imposed; and his opportunity and ability to communicate with his attorneys about the nature of the State's case, possible defenses, and the desirability of a negotiated plea. Defendant never indicated that he did not understand the questions, nor did he ask to have any question repeated, as would be a natural human response if difficulties with the interpreter prevented him from following the proceedings. Defendant raised his first objection only after receiving a sentence with which he evidently was disappointed. His failure to object sooner is a factor that weighs heavily against a claim of inadequate comprehension. See Paz, 981 F.2d at 201 n.2, quoting Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir. 1989) (" 'To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse' ").

It is possible, of course, that when a non-English-speaking defendant is naturally timid or reticent, the daunting nature of a criminal proceeding might stifle any impulse to express dissatisfaction with the interpreter. That was, more or less, the explanation defendant offered at the hearing on his motion to withdraw his plea. He testified that although he did not understand the interpreter, he did not interrupt the trial judge because he "didn't know anything about these things" and did not know he had the right to interrupt to inform the court that he did not understand what was being said. However, the trial court did not find defendant's testimony to be credible. It is firmly established that "a trial court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." People v. Cortez, 361 Ill. App. 3d 456, 463 (2005).

Moreover, Dr. Dunne's evaluation of defendant's fitness tends to confirm that defendant understood the ramifications of pleading guilty. Dr. Dunne interviewed defendant after he entered his guilty plea, but before he was sentenced. According to Dr. Dunne's report:

"[Defendant] understood that he did not go to trial. He understood that a statement he made to the police and the weapon recovered could be used against him. *** He told how his attorneys advised against going to trial because they thought he would be found guilty. [Defendant] stated that they told him he could go to prison for 60 to 120 years if he went to trial and lost. He said five or six months ago he agreed to tell the judge he is guilty. [Defendant] told how 'they made an offer to my attorney' involving a possible sentence of 20 to 55 years. [Defendant] understood that this means that he would have to serve at least 20 years and at the most 55 years. He did not know what the judge would take into consideration when determining the sentence. When asked what arguments could be made

-7-

for leniency, [defendant] noted the report from the doctor (Dr. Choca), how he behaves and his lack of a prior criminal record. When asked what arguments the [S]tate's [A]ttorney might make for a severe sentence, [defendant] indicated that the [S]tate's [A]ttorney would say that he is a bad person because of what he did. [Defendant] stated that his attorneys informed him that they would do everything possible to try and get him the 20-year sentence, but that this sentence is not certain. He noted that his attorney told him that the 20 to 55 year offer was the best deal they could get for him. He indicated that he trusts his attorneys."

Under these circumstances, we are persuaded that defendant sufficiently comprehended the consequences of his guilty plea. Therefore, the failure to inquire into the interpreter's identity and qualifications and to place her under oath was not plain error.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

O'MALLEY and CALLUM, JJ., concur.