**Weston LUDRICK, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–223.**

Court of Appeals of Arkansas.

Jan. 26, 2011.

Rehearing Denied March 2, 2011.

William Owen James, Jr., Little Rock, for appellant.

Jake H. Jones, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Weston Ludrick originates from Pohnpei, which is an island located within the Federated States of Micronesia in the Western Pacific. Mr. Ludrick's native language is Pohnpeian, and he speaks a dialect known as Kiti. Mr. Ludrick also speaks some English.

On December 21, 2008, Mr. Ludrick was involved in an automobile accident in Springdale that resulted in the death of one man and injuries to three others. Mr. Ludrick was subsequently charged in Washington County Circuit Court with negligent homicide, multiple counts of first-degree battery, violation of the implied-consent law, and driving on a suspended license.

On January 30, 2009, Mr. Ludrick filed a motion for a certified Pohnpeian-language interpreter to assist him with pretrial preparation and the impending trial. In his motion, Mr. Ludrick asserted that he possessed a limited English vocabulary and that his constitutional rights required the appointment of a certified interpreter.

A hearing was held on Mr. Ludrick's motion on September 21, 2009. At that hearing the trial court heard testimony from Mara Simmons, who is the Director of the Court Interpreter Services for the Administrative Office of the Courts. The trial court also heard testimony from Sandy Joel and her husband, Peter Joel. Mrs. Joel was the proposed interpreter, and Mr. Joel testified that he could assist his wife if she were appointed as the interpreter. At the conclusion of the hearing, the trial court appointed Sandy Joel, as a non-certified interpreter, to interpret for Mr. Ludrick.

On September 24, 2009, Mr. Ludrick filed a motion to reconsider appointment of a non-certified interpreter. In that motion, Mr. Ludrick asserted:

1. The Court appointed Sandy Joel as a non-certified interpreter in these cases on September 21, 2009.
2. On Monday September 21, 2009, Mara Simmons testified that in her opinion Sandy Joel was qualified to

be appointed as a non-certified interpreter in these cases.

3. On Tuesday September 22, 2009, both the Prosecutor and Defense counsel were contacted by Mara Simmons and informed that after witnessing Sandy Joel's performance as an interpreter at the hearing on Monday September 21, 2009 she no longer believed that Sandy Joel was qualified to proceed as the non-certified interpreter in these cases.

4. That this court relied heavily upon the opinion of Mara Simmons in appointing Sandy Joel as the non-certified interpreter in these cases.

5. The defendant requests the Court to reconsider its appointment of Sandy Joel as a non-certified interpreter in this case due to the change in circumstances.

At a hearing held on September 28, 2009, the trial court found that, based on the testimony of Ms. Simmons and Mrs. Joel's performance at the previous hearing, Mrs. Joel remained qualified to interpret.

A jury trial commenced on November 3, 2009. At trial, Mr. Ludrick asserted that there was uncertainty about the qualification of his interpreters. The trial court responded that it had already appointed two qualified interpreters, that being Mrs. Joel with the assistance of her husband, Mr. Joel. The jury trial proceeded with the appointed interpreters, and the jury convicted Mr. Ludrick of negligent homicide, three counts of first-degree battery, violation of the implied-consent law, and driving on a suspended license. Mr. Ludrick was sentenced to a total of forty years in prison.

Mr. Ludrick now appeals from his convictions. Mr. Ludrick's sole argument for reversal is that he was denied his due process rights when he was unable to fully understand the proceedings against him because the trial court appointed a non-certified interpreter. We find no error and affirm.

At the hearing on appellant's motion for a certified interpreter, Mara Simmons gave the following testimony. Ms. Simmons testified that there is a certification process administered by the Court Interpreter Services. She stated that a person becomes a certified interpreter in Arkansas through several steps, beginning with a written test. The second step consists of a two-day seminar on the role of a court interpreter, with instruction on how to interpret. The candidate then studies for a certified test, which is administered six months later. Ms. Simmons stated that there is a certification program for twenty-two languages, but that Kiti is not one of them. Thus, there are no certified interpreters for that language.

Ms. Simmons testified that her office was contacted by the trial court several months prior to the hearing and was asked to try to find someone in the community who spoke Kiti, but that their efforts were unsuccessful. Ms. Simmons then embarked on a national search utilizing a database used by forty-four states, and she contacted agencies specializing in rare languages, but she still was unable to find an interpreter with this particular dialect. Finally, Ms. Simmons contacted a consul, Carmen Chong, who identified Sandy Joel. Mrs. Joel is a native of the Marshall Islands, which are also located in the Western Pacific.

Ms. Simmons contacted Mrs. Joel and Mrs. Joel informed her that she is fluent in Kiti, and that her husband is from Pohnpei. Mrs. Joel had previously passed the test, gone to the two-day orientation, attended the workshops, and was on the registry as an interpreter of the Marshallese language. Ms. Simmons indicated

that Mrs. Joel had adequate knowledge of the American judicial system and had prior experience as a Marshallese interpreter. Ms. Simmons further asserted that Mrs. Joel is familiar with Administrative Order Number 11 [1] and abides by the provisions of the order in her interpreting duties. Given Mrs. Joel's training, experience, and knowledge of interpreting techniques, Ms. Simmons was confident that Mrs. Joel could communicate and interpret as required in any court setting.

Mrs. Joel testified that her husband was born in Pohnpei and that she lived there for ten years and learned to speak Kiti. She stated that she and her husband converse in the Kiti language. Mrs. Joel indicated that she has no difficulty translating English to Kiti. She stated that she has no problems explaining everything and thought that she could serve as a Kiti interpreter in this case.

Mr. Joel testified that he is specifically familiar with the Kiti dialect and that he regularly translates from English to Kiti, although not in court. However, he stated that he was an employee of the court system in Pohnpei for two years, and that their court system is somewhat similar to ours. Mr. Joel testified that his wife is also proficient in Kiti. He further stated that he feels comfortable interpreting from English to Kiti, and that if his wife were appointed to interpret in this case he believed he could assist her.

During the jury trial the State elicited testimony about the traffic accident. Bruce Armstrong testified that on the night of December 21, 2008, he was driving in his vehicle when a car being driven by Mr. Ludrick was moving erratically and then came up from behind him at a high rate of speed. Mr. Armstrong saw Mr. Ludrick's headlights disappear in his rear-view mirror, and then the two vehicles collided. As a result, both vehicles were directed into oncoming traffic and struck a van being driven by Amber Ayala. In Mrs. Ayala's testimony, she stated that prior to the accident she saw an oncoming car going up and down on the curb. Then the car collided with the other vehicle, and when the two vehicles entered her lane there was nothing she could do to avoid the collision.

After emergency personnel arrived on the scene, Mrs. Ayala had to be cut out of the van with the jaws-of-life. She was in the hospital for nine days, could not walk for four months, and now walks with a limp as a result of a metal rod being surgically implanted from her knee to her hip. Two of Mrs. Ayala's children who were passengers in the van were also injured. One of her children suffered a cracked skull requiring placement of a metal plate in his head. The other child also sustained a head injury, resulting in extensive bleeding, a concussion, and the need for plastic surgery. Mrs. Ayala's father-in-law was also riding as a passenger in the van, and he was killed in the accident.

After the accident, Mr. Ludrick was arrested and taken to the police station. There was testimony from the police that Mr. Ludrick failed sobriety tests and smelled strongly of intoxicants. Mr. Ludrick refused to take a breathalyzer test, but a blood sample was taken that detected a blood-alcohol level of .27 percent. There was testimony from the police that Mr. Ludrick communicated with them in English with full sentences and gave no indication that he did not understand

---

1. Administrative Order Number 11 sets forth the Arkansas Code of Professional Responsibility for Interpreters in the Judiciary.

them. When the police told Mr. Ludrick that someone in the accident had died, Mr. Ludrick laughed and responded that he had not hurt anyone. Through his interpreter, Mr. Ludrick testified about the accident during the sentencing phase of the trial and indicated that he tried to avoid the accident and did not intend for it to happen.

In this appeal, Mr. Ludrick argues that the trial court erred in failing to appoint a certified interpreter to assist in his defense. He claims that the non-certified interpreter appointed by the trial court was inadequate and that as a result he was deprived of his constitutional rights.

Arkansas Code Annotated section 16–89–104(a) (Repl.2005) provides that every person who cannot speak or understand the English language and who is a defendant in any criminal action shall be entitled to an interpreter to aid the person throughout the proceeding. Arkansas Code Annotated section 16–10–127 (Repl. 2010) authorizes and directs the Administrative Office of the Courts to establish a program to facilitate the use of interpreters and translators in all state and local courts in Arkansas and to prescribe the qualifications of and certify persons who may serve as certified interpreters in all courts in the state. The Preamble to Administrative Order 11 provides:

Many persons who come before the courts are partially or completely excluded from full participation in the proceedings due to limited English proficiency or a speech or hearing impairment. It is essential that the resulting communication barrier be removed, as far as possible, so that these persons are placed in the same position as similarly situated persons for whom there is no such barrier. As officers of the court, interpreters help assure that such persons may enjoy equal access to

justice and that court proceedings and court support services function efficiently and effectively. Interpreters are highly skilled professionals who fulfill an essential role in the administration of justice.

In a per curiam opinion, *In re Certification for Foreign Language Interpreters in Arkansas Courts*, 338 Ark. App'x 827, 828–29 (1999), our supreme court set forth the following guidelines for the appointment of interpreters:

When an interpreter is requested or when the judge determines that a party or witness has a limited ability to understand and communicate in English, a certified interpreter shall be appointed, using the most current roster of certified interpreters maintained by the AOC. Where possible, but particularly for more complex cases, an interpreter with Advanced Certification as denoted on the roster should be used.

The judge may appoint a non-certified interpreter only upon a finding that diligent, good faith efforts to obtain a certified interpreter have been made and none has been found to be reasonably available. Recognizing that the judge is the final arbiter of any interpreter's qualifications, a non-certified interpreter may be appointed only after the judge has evaluated the totality of the circumstances including the gravity of the judicial proceeding and the potential penalty or consequence involved. Before appointing a non-certified interpreter, the judge shall make a finding that the proposed non-certified interpreter appears to have adequate language skills, knowledge of interpreting techniques, familiarity with interpreting in a court setting, and that the proposed non-certified interpreter has read, understands, and will abide by Administrative Order No. 11, the Arkansas Code of Professional

Responsibility for Interpreters in the Judiciary. A summary of the efforts made to obtain a certified interpreter and to determine the capabilities of the proposed non-certified interpreter shall be made on the record or as a docket entry of the legal proceeding.

An accused in a criminal prosecution is provided the constitutional rights to due process and to confront adverse witnesses pursuant to the Fifth and Sixth Amendments of the United States Constitution and article 2, sections 8 and 10 of the Arkansas Constitution. In *United States v. Cirrincione,* 780 F.2d 620 (7th Cir.1985), the court held that a defendant in a criminal proceeding is denied due process when (1) what is told to him is incomprehensible; (2) the accuracy and scope of the translation at the hearing is subject to grave doubt; (3) the nature of the proceeding is not explained to him in a manner designed to ensure his full comprehension; or (4) a credible claim of incapacity to understand due to language difficulty is made and the court fails to review the evidence and make appropriate findings of fact. A defendant has the right to an interpreter who is competent to render accurate translations. *United States v. Villegas,* 899 F.2d 1324 (2d Cir.1990). If a defendant is unable to speak and understand English and is compelled to face criminal charges without access to effective translation of the proceedings by a competent and impartial interpreter, then his ability to present a defense may be substantially undermined, and there is a serious possibility of grave injustice. *Ramirez v. United States,* 877 A.2d 1040 (D.C.2005). In *Rangel v. State,* 179 S.W.3d 64 (Tex.App.2005), the court held that when a trial court is aware that a defendant has a problem understanding the English language, the defendant's right to have an interpreter translate the proceedings into a language the defendant understands must be imple-

mented by the trial court unless expressly waived. When faced with the question of whether an interpreter's performance at trial was such that it violated the defendant's due process rights, courts have looked to whether any inadequacy in the interpretation made the trial fundamentally unfair. *See, e.g., United States v. Huang,* 960 F.2d 1128 (2d Cir.1992).

In arguing for reversal in the present case, Mr. Ludrick relies on *United States ex rel. Negron v. New York,* 434 F.2d 386 (2d Cir.1970). In that case, the court reversed the Spanish-speaking defendant's murder conviction because of the lack of adequate interpreting services at trial. In that case, an interpreter employed on behalf of the prosecution provided to the defendant summarized testimony of witnesses who had already testified during two brief recesses of the four-day trial. The court stated that Negron's incapacity to respond to specific testimony hampered the capacity of his counsel to conduct effective cross-examination. The court further stated that not only for the sake of cross-examination, but as a simple matter of humaneness, Negron deserved more than to sit in total incomprehension as the trial proceeded. The court held that failure to provide a translator rendered the trial constitutionally infirm, notwithstanding that the interpreter employed by the prosecutor from time to time supplied resumes of the proceedings.

Turning to the circumstances of the case at bar, Mr. Ludrick contends that he was forced to sit in total incomprehension as the trial went on around him. He asserts that his interpreter, Mrs. Joel, had never been an interpreter of Kiti nor had she interpreted in a jury trial. Moreover, Mr. Ludrick points out that on one occasion during the proceedings he gave an indication that he did not understand Mrs. Joel's explanation of the proceedings, and he

questions whether Mrs. Joel was interpreting the proceedings word for word as opposed to merely providing summaries or explanations. Mr. Ludrick further asserts that prior to the September 21, 2009, hearing, he was scheduled for a forensic evaluation but refused to speak to the psychiatrist because, as explained through Mrs. Joel, Mr. Ludrick did not think she could interpret well for him because she was born on the Marshall Islands. Finally, Mr. Ludrick contends that subsequent to that hearing Ms. Simmons reconsidered Mrs. Joel's qualifications and believed she was no longer qualified to be a non-certified interpreter. Mr. Ludrick maintains that under these circumstances, the accuracy and scope of the translation during the proceedings were subject to grave doubt and that his due process rights were violated. Due to the trial court's error in failing to make available a qualified and certified interpreter, Mr. Ludrick requests a new trial.

We hold that the trial court complied with the standards set forth in our supreme court's per curiam, In re: Certification for Foreign Language Interpreters in Arkansas Courts, and that the interpreter appointed by the trial court adequately protected Mr. Ludrick's constitutional rights. The per curiam expressly permits a non-certified interpreter upon a finding that diligent, good faith efforts to obtain a certified interpreter have been made and none has been found to be reasonably available. In this case, Ms. Simmons made diligent efforts to obtain a certified interpreter, and at the hearing she advised the trial court that there were no certification programs for the Kiti language. Notwithstanding that fact, Ms. Simmons was able to obtain the services of Mrs. Joel, who was certified and had experience as a Marshallese interpreter and also spoke Kiti.

At the September 21, 2009, hearing, Ms. Simmons testified that she was confident that Mrs. Joel could meet the requirements of interpreting Kiti in a court setting. While appellant argued both in his motion to reconsider appointment and on appeal that Ms. Simmons subsequently changed her opinion, there was no evidence to support that assertion. On the day of trial Mr. Ludrick acknowledged that Ms. Simmons advised him that Mrs. Joel and Mr. Joel were to the level any applicant would be before taking the certification process. Both Mrs. Joel and Mr. Joel indicated that they are fluent in Kiti, and Mr. Joel was appointed to assist Mrs. Joel in her capacity as interpreter. Significantly, Kiti is Mr. Joel's native language. Mrs. Joel's proficiency in Kiti was demonstrated by her ability to translate Mr. Ludrick's testimony from Kiti to English during the sentencing phase of the trial.

This case is clearly distinguishable from United States ex rel. Negron, supra, relied on by appellant. There, the appellant was not appointed an interpreter and received only brief summaries of testimony from an interpreter employed by the prosecutor. In the instant case Mrs. Joel, with the assistance of her husband, was appointed to interpret for Mr. Ludrick, and both Mrs. Joel and her husband swore under oath to impartially interpret to appellant the testimony of all the witnesses. In addition to the services of the interpreter, there was evidence that during Mr. Ludrick's encounter with the police he was able to communicate in English using full sentences. Contrary to appellant's argument, it can scarcely be said that Mr. Ludrick sat in total incomprehension as the trial proceeded. On the contrary, there was ample evidence that he was provided an adequate interpreter and was able to understand the proceedings. As the final arbiter of the interpreter's qualifications, the trial court specifically found that Mrs.

Joel "has the adequate language skills, clearly has knowledge of interpreting techniques, and certainly is familiar with and has read, and will abide by the provisions of Administrative Order Number 11 as it relates to the professional responsibilities of certified or non-certified interpreters." On this record, we cannot say that the trial court committed error or that there was any fundamental unfairness to Mr. Ludrick.

Affirmed.

WYNNE and GLOVER, JJ., agree.